IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

DENNIS SAGEZ et al.,

     Plaintiffs,

vs.

GLOBAL AGRICULTURAL
INVESTMENTS, LLC; TYLER
BRUCH; BRUCHSIDE, INC.; ART
A. HALL; ARTAH HOLDINGS,
LLC; and, BOL, LLC,

     Defendants.

No. 11-CV-3059-DEO

ORDER ON MOTION TO DISMISS

_____

**TABLE OF CONTENTS**

I.   INTRODUCTION AND BACKGROUND . . . . . . . . . . . . . 2

II.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . 3
    A.  Factual Background . . . . . . . . . . . . . . . 4
    B.  Procedural Background  . . . . . . . . . . . . . 9
    C.  The Amended Complaint  . . . . . . . . . . . . . 12

III.  MOTION TO DISMISS STANDARD . . . . . . . . . . . 18

IV.  ISSUES . . . . . . . . . . . . . . . . . . . . . . . 21

V.  ANALYSIS  . . . . . . . . . . . . . . . . . . . . . 26
    A.  'Shotgun' Claims and Permissive Joinder . . . . 26
    B.  Amended Complaint Count I  . . . . . . . . . . . 32
        1.  Statute of Limitations  . . . . . . . . . 33
        2.  §12(a)2 Standing  . . . . . . . . . . . . 36
        3.  Hall is Not a Seller  . . . . . . . . . . 41
        4.  Count I Conclusion  . . . . . . . . . . . 45
    C.  Count II . . . . . . . . . . . . . . . . . . . . 45
        1.  Statute of Limitations  . . . . . . . . . 49

          2.  **Pleading Standards**  . . . . . . . . . . . . . 53
          3.  **Hindsight and Bespeaks Caution**  . . . . . . 61
     **D.  Count III** . . . . . . . . . . . . . . . . . . . . 62
     **E.  Count IV** . . . . . . . . . . . . . . . . . . . . 64
     **F.  Count V** . . . . . . . . . . . . . . . . . . . . . 66
     **G.  Count VI** . . . . . . . . . . . . . . . . . . . . 68
     **H.  Count VII** . . . . . . . . . . . . . . . . . . . . 71
     **I.  Count IX** . . . . . . . . . . . . . . . . . . . . 73
     **J.  Count X and Count XI** . . . . . . . . . . . . . . 78
     **K.  Count XII** . . . . . . . . . . . . . . . . . . . . 82
     **L.  Other Issues** . . . . . . . . . . . . . . . . . . 84

**VI.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . 85

## I.  INTRODUCTION AND BACKGROUND

This matter is currently before the Court on Defendant Tyler Bruch and Defendant Bruchside, Inc.'s [hereinafter collectively as Bruch] Motion to Dismiss, Docket No. 57; Defendant Artah Holdings, LLC, and Defendant Art A. Hall's [hereinafter Collectively as Artah] Motion to Dismiss, Docket No. 58; and Artah's Supplemental Motion to Dismiss, Docket No. 104.

The Defendants' Motions raise various issues arguing that the Court should dismiss the Plaintiffs' Complaint. The parties appeared for a hearing on April 29, 2013. After listening to the parties' arguments, the Court took the matter under consideration and now enters the following.

## II.   BACKGROUND

The above-captioned case arises in the context of securities fraud.  In short, the Plaintiffs, a group of upper-midwest farmers/investors, gave money to the Defendants.  The Defendants purported to be engaged in lucrative farming/agricultural operations in the South American country of Brazil and solicited the Plaintiffs' money as investments in those Brazilian farms.  However, the Brazil operations failed to make money and the Plaintiffs did not see any returns on their investments.  The Plaintiffs now believe the Defendants committed fraud regarding the investments. Specifically, they allege the Brazil farming operation was essentially a Ponzi scheme perpetuated by the Defendants. Based on that belief, the Plaintiffs filed the present law suit.

As indicated by both the length of the Amended Complaint, the length of the parties' pleadings regarding the pending Motions, and the time it took the Court to consider these matters, there is no doubt that this is a complex case.  At this early stage of the litigation, no factual findings are appropriate.  However, the Court believes that a background of the situation is necessary for an understanding of the legal

arguments considered herein.  Accordingly, the Court sets out
the relevant history of the parties' dispute.

## A.  Factual Background

In the early 2000's, Defendants Tyler Bruch and Art Hall
began establishing investment opportunities for managed
farming and agriculture in Western Bahia, Brazil (one of
Brazil's 26 states, located in the northeastern part of South
America on the Atlantic Coast).  The purpose of their business
was to entice domestic farmers/investors to invest money in
large scale agricultural operations in Brazil.  As set out in
the Plaintiffs' brief:

> [b]eginning in early to mid-2000, as
> evidenced by Bruchside Fund I, LP
> PowerPoint, Bruch and Hall told Bruchside
> Fund I investors about Bruch's extensive
> knowledge of Brazilian farming operations
> noting that "Tyler has been actively
> involved in agriculture for many years,
> having grown up in a farming family in Iowa
> and co-managing crop production and labor
> for Bruchside Farms, Inc.[,] in Iowa for
> four years prior to moving to Brazil, and
> he had three years of farming experience in
> Brazil."  See Exhibit 1; Complaint ¶ 73.
> Bruch and Hall also told investors that
> Bruch "lives near the farm in Brazil, and
> runs the day-to-day operations."  See
> Exhibit 1.  Bruch and Hall further informed
> investors that Bruch "has a degree in
> Agriculture Studies from Iowa State
> University with an emphasis in economics,
> and he has also studied International
> Agriculture in Canada, Italy, Panama, and

> Brazil." See Exhibit 1. Bruch and Hall
> told Bruchside Fund I investors that Bruch
> "is a frequent presenter on Brazilian
> agriculture to universities and continuing
> educations groups all over the Mid-West."
> See Exhibit 1.

Docket No. 78, Att. 1, p. 5. Based on those assertions, the

Plaintiffs began investing money in Bruchside Fund I in the

spring of 2006. (Bruchside Fund I is the first Brazil farming

investment fund sponsored by the Defendants relevant to the

present case.) The Plaintiffs maintain that the Defendants'

investment schemes were fatally flawed, alleging that:

> Bruchside Fund I investors were lured to
> invest based on the Bruchside Fund I
> PowerPoint representations regarding
> expected returns, existing money
> commitments, existing U.S. and Brazilian
> accounting staff, existing U.S. and
> Brazilian legal staff expertise, and tax
> benefits/structures. See Exhibit 1.
> Little did investors know, the Funds
> projections were inherently flawed. Bruch
> and Hall did not have any accounting staff,
> and Bruch and Hall had not properly vetted
> the tax benefits/structure represented
> during their presentation – all of which
> occurred without a filed registration
> statement.

Docket No. 78, Att. 1, p. 6.

Bruchside Fund I stopped taking new investors in 2006.

In February 2007, the Defendants created Bruchside Fund II.

> On June 26, 2007, Defendants held an
> investor meeting at the Wild Rose Casino in

> Emmetsburg, Iowa[,] during which Defendants
> sought additional investors for Bruchside
> Fund II by providing, among other things,
> updates regarding crop production and
> yields for the 2006/2007 crop year – these
> 2007 crop production and yields served as
> the basis for Hall's February 2007
> representations regarding a 36% return.
> See Bruchside Fund II PowerPoint attached
> hereto and marked as Exhibit 7. During the
> meeting, Bruch and Hall also made
> representations regarding in house
> accounting and tax benefits/structures.
> Bruch and Hall's presentation also included
> spreadsheets that continued to present
> inherently flawed projections.

Docket No. 78, Att. 1, p. 9. In August 2007, Defendants Bruch and Hall allegedly closed Bruchside Fund II after enticing most Bruchside Fund I investors to reinvest.[1] The next month, they advised investors in Bruchside Fund I that they would begin receiving financial returns on their original investments.

The payment made to investors in September of 2007 represents what the Plaintiffs contend is a Ponzi Scheme. As set out in the Plaintiffs' brief:

> [t]rue to Defendants['] February 2007
> representations and Defendants['] August
> 19, 2007 letter, on September 19, 2007,
> Defendants paid Bruchside Fund I investors

---

[1] The Plaintiffs assert that although the Bruchside Funds were "closed" on a certain date, the Defendants continued to pursue and accept new investors for those funds. See. Docket No. 78, Att. p. 12.

> what they represented to be a 40% "ROI."
> See Complaint ¶¶ 113, 524. Defendants
> represented that the source of these
> returns was from farming operations, but
> the Defendants failed to disclose the true
> source of the returns. See Complaint ¶
> 526. Upon information and belief,
> Defendants used investor funds from new
> Bruchside Fund II investments to pay
> returns to Bruchside Fund I investors.

Docket No. 78, Att. 1, p. 10.

Following the initial payment on Bruchside Fund I,
Defendants created two other investment opportunities, Global
Ag Biodiesel and the Gin Fund. Then, in 2008, the Defendants
began offering an investment opportunity in Bruchside Fund
III. The Plaintiffs allege that the Defendants continued to
use Ponzi type payouts to entice further investments.

> On October 3, 2008, while Defendants were
> still attempting to entice additional
> Bruchside Fund III investors, Defendants
> represented that Bruchside Fund I investors
> would receive a "22.43% cash return, net of
> fees" which would be paid out in two
> segments. See October 3, 2008 letter
> attached hereto and marked as Exhibit 15.
> On October 3, 2008, Defendants paid
> Bruchside Fund I investors what they
> represented to be 25% of their alleged
> 22.43% return. See Exhibit 15; Complaint
> ¶ 113. Defendants represented that the
> remaining funds would be paid by the end of
> the year. See Exhibit 15. Defendants did
> not stop there. In order to ensnare the
> maximum number of Bruchside Fund III
> investors, on October 3, 2008, Defendants
> represented that Bruchside Fund II

> investors would receive a "18.43% cash
> return, net of fees" which would be paid
> out in two segments. See October 3, 2008
> letter attached hereto and marked as
> Exhibit 16. True to form, on October 3,
> 2008, Defendants paid Bruchside Fund I
> investors what they represented to be 25%
> of their alleged 22.43% return. See
> Exhibit 16; Complaint ¶ 124. Defendants
> represented that the remaining funds would
> be paid by the end of the year. See
> Exhibit 16.

Docket No. 78, Att. 1, p. 13-14. Again, many of the Plaintiffs invested in Defendants' new opportunity. Similarly, many of the Plaintiffs invested in the 'BOL Fund' created by the Defendants as a means to garner 'credit' for the ongoing farming operations. The Plaintiffs generally allege that, other than the early payments from Bruchside Fund I and II, they never received any return on any of their investments with the Defendants. Moreover, the Plaintiffs state that the Defendants' representations regarding the nature of the investments, and the underlying farming business, were fraudulent. The Plaintiffs claim that the Defendants never actually set up a profitable farming operation in Brazil, nor did they do the business/legal due diligence necessary to run this type of investment. Additionally, the Plaintiffs allege that the Defendants falsely stated that the Brazil operation was profitable, while

8

financial documentation shows that the businesses were losing money.

In sum, the Plaintiffs allege that the Defendants were not running a business, they were running a scam.

**B.  Procedural Background**

The Plaintiff group is comprised of thirty-six individuals and businesses that invested in Defendant Bruch and Defendant Hall's various ventures.  The Plaintiffs filed their initial Complaint, Docket No. 1, on November 8, 2011. In the initial Complaint, the Plaintiffs named nine Defendants:  Global Agricultural Investments, LLC; Tyler Bruch, Bruchside, Inc.; Art A. Hall; Artah Holdings, LLC; Popular Securities, Inc.; BOL, LLC; Alan Kluis and Elia Tasca.

The Defendants filed a series of Motions to reset the deadlines to respond to the Complaint.  See for example Docket Nos. 24, 48 and 56.  On March 20, 2012, the Plaintiffs voluntarily dismissed Defendant Alan Kluis.  Docket No. 38. On September 4, 2012, Defendant Bruch filed a Motion to Dismiss, Docket No. 57.  On that same date, Defendant Artah also filed a Motion to Dismiss.  Docket No. 58.  On September 11, 2012, Defendant Popular Securities, Inc., filed a Motion to Dismiss.  Docket No. 65.  The Plaintiffs then filed a

series of motions for extensions of time to file a resistance to the various Motions to Dismiss. See for example Docket No. 74. On December 3, 2012, the Plaintiffs filed a joint Resistance to the pending Motions to Dismiss. Docket No. 80. On December 7, 2012, the Plaintiffs voluntarily dismissed Defendant Popular Securities, Inc. Docket No. 85. Accordingly, Popular Securities, Inc.'s Motion to Dismiss, Docket No. 65, was denied as moot. On January 9, 2013, Defendant Artah filed a Reply Brief. Docket No. 86. On January 10, 2013, Defendant Bruch also filed a Reply Brief. Docket No. 90. On January 15, 2013, the Plaintiffs filed a Surreply Brief. Docket No. 94. On that same date, the Plaintiffs filed an Amended Complaint, Docket No. 96, which superceded their original Complaint. On January 18, 2013, Defendant Bruch filed a Joint Response to the Plaintiffs' Amended Complaint which stated:

> [t]he Amended Complaint does not impact any allegation related to Mr. Bruch or Bruchside, Inc. Since the Amended Complaint does not alter Plaintiffs' allegations asserted against Defendants, Plaintiffs and Defendants request that the Court allow and direct that the Motion Papers shall be applied against the Amended

> Complaint such that Plaintiffs and
> Defendants do not have to refile their
> respective Motion Papers.

Docket No. 97, p. 2.

Shortly thereafter, Defendant Bruch filed a Motion for an in-person oral argument on the pending Motions.[2] The Plaintiffs contested Bruch's request to conduct the hearing live in the courthouse. Docket No. 100. The Court ultimately ruled that an in-person hearing was appropriate and set a hearing date for April, 2013. On January 25, 2013, Defendant Artah filed a Supplemental Motion to Dismiss, Docket No. 104, based on the Plaintiffs' Amended Complaint. On April 26, 2013, Defendant Artah filed a Motion for a More Definite Statement of Count III of the Amended Complaint. Docket No. 110. Magistrate Judge Strand denied that Motion, without prejudice, pending resolution of the Motion to Dismiss. Docket No. 113.

As indicated above, the Court held a live hearing on this matter on April 18, 2013. Based on statements made by the Plaintiffs during the hearing, the Court dismissed Defendant

---

[2] The Court was out of the area at the time and routinely schedules civil motion hearings by telephone.

Elia Tasca.[3]  Docket No. 111.  The Plaintiffs also voluntarily

dismissed Count I, part 12-A-I.  _Id._  The parties did not

finish their arguments during the hearing on April 18, 2013,

and a subsequent telephone hearing was held on April 29, 2013.

After listening to the parties' arguments, the Court took the

matter under consideration.

### C.  The Amended Complaint

As stated above, the Plaintiffs are a large group of

investors who gave money to the Defendants.  The Amended

Complaint sets out the history of the Defendants' Brazilian

ventures.  The Complaint describes Bruchside Fund I, Bruchside

Fund II, and Bruchside Fund III as limited partnerships

registered in Texas; the Complaint describes Global Ag

Biodiesel Fund as a limited liability company registered in

Texas; and BOL, LLC, as an Iowa corporation.  The Amended

Complaint also lists the amount each Plaintiff invested in

each venture.[4]

_____

[3]  Based on the statements made by the parties during the
hearing, it seems that Defendants Global Agricultural
Investments, LLC, and BOL, LLC, are defunct business entities.
Those two Defendants are not represented by counsel, nor are
they actively participating in this case.  Thus, for the
purposes of the present Motions, the active remaining
Defendant (groups) are Bruch and Artah.

[4]  The Court need not repeat those allegations here.
Suffice to say that in total, the Plaintiffs invested several

Finally, the Amended Complaint, Docket No. 96, sets out the Plaintiffs' specific claims.

In Count I, the Plaintiffs contend that Bruchside Fund I, Bruchside Fund II, Bruchside Fund III, Global Ag Biodiesel Fund and BOL, LLC, are securities as defined by 15 U.S.C. § 77b(a)(1).  The Plaintiffs claim that the Defendants offered and sold the securities to the Plaintiffs and that the Defendants made untrue statements of fact or omitted material facts in connection with the securities that it sold to the Plaintiffs.  Additionally, the Defendants used the mail or other facilities of interstate commerce in connection with the securities.  The Plaintiffs contend that those actions by the Defendants were the proximate cause of the Plaintiffs' damages.  Accordingly, the Plaintiffs pray that the Court enter judgment, jointly and severally, against these Defendants, awarding the Plaintiffs compensatory damages, including, but not limited to:  loss of initial investment; loss of return of past, present, and future investments; costs and attorney fees; and any and other such relief the court may deem equitable.

---

million dollars with Defendants Artah and Bruch.

In Count II, the Plaintiffs allege that Bruchside Fund I, Bruchside Fund II, Bruchside Fund III, Global Ag Biodiesel Fund and BOL, LLC, are securities as defined by 15 U.S.C. § 78c(a)(10), and that the Defendants offered and sold those securities to the Plaintiffs. The Plaintiffs allege that the Defendants used the mail and interstate commerce in connection with the securities and that the Defendants employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted material facts; and engaged in acts, practices and courses of business which operated as a fraud and deceit upon the Plaintiffs. Moreover, the Plaintiffs allege that the Defendants sold the securities knowingly or with reckless disregard for the truth and that the Defendants intended to deceive the Plaintiffs. The Plaintiffs allege that the Defendants' conduct resulted in the Plaintiffs' damages. Consequently, the Plaintiffs claim that they are entitled to compensatory damages, including, but not limited to: loss of initial investment; loss of return of past, present, and future investments; costs and attorney fees; and any and other such relief the court may deem equitable.

In Count III, the Plaintiffs allege that Defendant Art Hall committed professional negligence. Plaintiffs allege

that Defendant Hall was negligent in one or more of the following practices: failure to determine the validity of misrepresentations of expense and profit projections for farming operations in Brazil; failure to keep the investments of the investors in GAI funds segregated in separate bank accounts and separate farming operations; failure to fill out all of the required Reg D forms and/or to ascertain whether the GAI offerings complied with Reg D in order to be exempt from registration; failure to determine the source of funds paid to investor Plaintiffs as returns from profitable farming operations in Brazil; and failure to provide quarterly and annual audited financial statements to investors. The Plaintiffs allege that his negligence continued throughout all of the GAI offerings. The Plaintiffs argue that they are entitled to both normal damages, and, because Defendant Hall's conduct was willful and wanton, punitive damages.

In Count IV, the Plaintiffs allege that all of the Defendants had a fiduciary duty to each of the Plaintiffs and that the Defendants breached those duties. Specifically, the Plaintiffs allege that the Defendants breached the duty by providing Plaintiffs with false or misleading information regarding GAI Funds. The Plaintiffs argue that they are

entitled to both normal damages, and, because the Defendants' conduct was willful and wanton, punitive damages.

In Count V, the Plaintiffs allege that the Defendants committed the tort of conversion. Specifically, the Plaintiffs allege that Defendants obtained money and equity from the Plaintiffs and used said monies in a manner which was not intended or represented to the Plaintiffs, and that the Defendants exercised control over the Plaintiffs' money in a manner that was inconsistent with, and in derogation of the uses for which, the Plaintiffs agreed that their money should be used. The Plaintiffs argue that the Defendants' conversion caused the Plaintiffs' actual financial loss, and it was done with willful and wanton disregard for the Plaintiffs' rights. Accordingly, the Plaintiffs request both normal and punitive damages.

In Count VI, the Plaintiffs allege that the Defendants provided negligent misrepresentations about the financial schemes. Specifically, the Plaintiffs claim that the Defendants supplied (or refrained from supplying) information to the Plaintiffs for the Defendants' own benefit. The Plaintiffs claim that they acted in reliance on the truth of the information about the schemes supplied by Defendants, and

Plaintiffs were justified in relying on the information. The Plaintiffs also claim that the Defendants' negligently supplied information was a proximate cause of Plaintiffs' damages. Accordingly, the Plaintiffs request both normal and punitive damages.

In Count VII, the Plaintiffs claim that the Defendants committed fraudulent misrepresentation. Specifically, the Plaintiffs allege that the Defendants intentionally conspired to make misrepresentations and conspired to omit material information about the various funds. Additionally, the Plaintiffs allege that the Defendants misrepresented and omitted information regarding their financial condition, status, business, endeavors, contracts, and customers. The Plaintiffs allege that they invested because of the fraudulent information. Accordingly, they argue that the Defendants are liable for the damages.

In Count VIII, the Plaintiffs make an allegation specific to Popular Securities. Because that Defendant has been dismissed, that issue is moot.

In Count IX, the Plaintiffs allege that the Defendants sold false or fraudulent securities by using misleading communications in violation of I.C.A. §502.501 and §502.501A.

The Plaintiffs argue that they were damaged by the Defendants' fraud under those code sections.

In Count X, the Plaintiffs allege that the Defendants acted in concert in an effort to defraud the Plaintiffs. Accordingly, the Plaintiffs argue that the Defendants should be held jointly liable.

In Count XI, the Plaintiffs allege that Defendants Global Ag Investments, LLC; Bruchside, Inc.; Tyler Bruch; BOL, LLC; and Alan Kluis and Elia Tasca were involved in a conspiracy to provide false information. However, Defendants Kluis and Tasca have been dismissed from this case. Additionally, as discussed above, Global Ag and BOL, LLC, are out of business and not participating in this case. Accordingly, the scope of this claim has been significantly limited.

In Count XII entitled, "Recission," the Plaintiffs claim that the Defendants made false representations and that the Plaintiffs relied on those false representations to the Plaintiffs' detriment.

## III.  MOTION TO DISMISS STANDARD

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to

relief." In order to meet this standard and to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means that the factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Cole v. Homier Distrib. Co., 599 F.3d 856, 861 (8th Cir. 2010). Furthermore, courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. Zoltek Corp. v. Structural Polymer Group, 592 F.3d 893, 896 n. 4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 664.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal alterations and citations omitted). Nevertheless, although the "plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility," it is not a "probability requirement." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). As such, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely," Id.

In assessing "plausibility," as required by the Supreme Court in Iqbal, the Eighth Circuit Court of Appeals has explained that courts should consider only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint. See Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n. 4 (8th Cir. 2003), stating that "in considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). The Court

may also consider "materials that are part of the public record or do not contradict the complaint." <u>Miller v. Redwood Toxicology Lab., Inc.</u>, 688 F.3d 928, 931 (8th Cir. 2012). "A more complete list of the matters outside of the pleadings that a court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." <u>Van Stelton v. Van Stelton</u>, 11-CV-4045-MWB, 2013 WL 3776813 (N.D. Iowa 2013) (internal citations omitted).

## IV. ISSUES

In their Motion(s) to Dismiss, the Defendants raise numerous issues.

In his Motion to Dismiss, Docket No. 57, Defendant Bruch argues: 1) the Plaintiffs' Complaint is structurally deficient under Federal Rule of Civil Procedure 8 because it fails to specifically articulate how each claim pertains to each Defendant; 2) Count II in the Plaintiffs' Amended Complaint, regarding Section 10(b) of the Securities Exchange

Act of 1934, is barred by the applicable statute of limitations; 3) Count II, regarding Section 10(b) of the Securities Exchange Act of 1934, should be dismissed because the Plaintiffs have failed to comply with the heightened pleading standard contained in Federal Rule of Civil Procedure 9(b); 4) the Plaintiffs have failed to state a claim under Section 10(b) of the Securities Exchange Act of 1934 because their claims are based on "hindsight" and the Defendants' assertions are protect by the "bespeaks caution doctrine;" 5) Plaintiffs' Count I, regarding Section 12(a)(1) of the Securities Exchange Act of 1933, is barred by the applicable statute of limitations; 6) Plaintiffs have failed to state a claim in Count I under Section 12(a)(1) of the Securities Exchange Act of 1933 because the Defendants were not required to register the alleged securities; 7) Plaintiffs have failed to state a claim in Count I under Section 12(a)(1) of the Securities Exchange Act of 1933 because they do not have standing; 8) Plaintiffs' Counts VI and VII fail as a matter of law because they are not specifically plead as required by Federal Rule of Civil Procedure 9(b); 9) Plaintiffs' Count IX, regarding I.C.A. Sections 502.501 and 502.501A fails as a matter of law because it is not specifically plead as required

by Federal Rule of Civil Procedure 9(b); 10) because Plaintiffs' fraud claims fail as set out above, so to do Counts X and XI, related to concert of actions and conspiracy; 11) Plaintiffs' Count IV, related to fiduciary duty, has not been specifically plead as required by Federal Rule of Civil Procedure 9(b); 12) Plaintiffs' Count V fails as a matter of law because the Plaintiffs have failed to state a claim for conversion; and 13) Plaintiffs' claim of rescission, Count XII, has not been sufficiently plead.

Defendant Bruch also resists Plaintiffs' attempts to further amend their Complaint. Finally, if the Plaintiffs' case is allowed to proceed, Defendant Bruch requests that the case be severed between each Plaintiff.

In its Motion to Dismiss, Docket No. 58, Defendant Artah argues that: 1) Plaintiffs' Count I should be dismissed because it is beyond the applicable statute of limitations; 2) Plaintiffs' Count I should be dismissed because it has failed to state a claim against Defendant Hall or Defendant Artah because they were not sellers as defined by the law; 3) Plaintiffs' Count II should be dismissed for the reasons stated in Defendant Bruch's Motion to Dismiss, Docket No. 57;[5]

---

[5] In their original Complaint, Docket No. 1, Plaintiffs did not include Defendant Artah in Count II. Accordingly,

4) Plaintiffs' Count III related to professional negligence fails because the Plaintiffs have failed to allege that they were the intended beneficiaries of Defendant Hall's professional services; 5) Plaintiffs' Count IV, related to fiduciary duty, fails as a matter of law because the Plaintiffs have failed to allege that Defendants Hall and Artah were in the profession of supplying information or that the Plaintiffs were the intended recipient of Defendant Hall's services; 6) Plaintiffs' Count V, related to conversion, fails as a matter of law because the Plaintiffs have failed to allege that Defendants Hall or Defendant Artah ever had dominion or control over Plaintiffs' money; 7) Plaintiffs' Count VI, regarding negligent misrepresentation, fails as a matter of law because the Plaintiffs have failed to allege

_____

Count II was not addressed in Defendant Artah's original Motion to Dismiss, Docket No. 58. However, as discussed above, the Plaintiffs filed an Amended Complaint, Docket No. 96. In their Amended Complaint, Plaintiffs included Defendant Artah in Count II. On January 25, 2013, Defendant Artah filed a Supplemental Motion to Dismiss, Docket No. 104. In that Supplemental Motion to Dismiss, Defendant Artah adopted Defendant Bruch's arguments related to Count II. Similarly, Defendant Artah's Original Motion to Dismiss did not address Plaintiffs' Counts VII and XII because Defendant Artah was not included in those Counts until the Plaintiff filed their Amended Complaint. Consequently, in the Supplemental Motion, Defendant Artah incorporated Defendant Bruch's Motion to Dismiss arguments related to those two Counts. See Docket No. 104.

that Defendants Hall or Artah were in the profession of supplying information or that Plaintiffs relied on information provided by Defendants Hall or Artah; 8) Plaintiffs' Count VII, related to fraudulent misrepresentation, fails for the reasons set out in Defendant Bruch's Motion to Dismiss, Docket No. 57, Att. 1, p. 35-36; 9) Plaintiffs' Count IX, related to I.C.A. §§ 502.501 and 502.201A, fails as a matter of law because the Plaintiffs have failed to allege that Defendants Hall or Artah were 'sellers' or that the Plaintiffs relied on representations made by Defendants Artah or Hall; 10) Plaintiffs' Count X fails to state a claim for concert of action; 11) Plaintiffs' Count XI fails to state a claim for conspiracy as set out in Defendant Bruch's Motion to Dismiss; 12) Plaintiffs' Count XII fails to state a claim for rescission because Plaintiffs fail to claim that Defendants Artah or Hall supplied the Plaintiffs any information; 13) the Plaintiffs have failed to plead facts that would support an award of punitive damages.

Defendant Artah also makes the argument that the Plaintiffs' case(s) should be severed and the Plaintiffs should proceed, if at all, individually. Finally, Defendant Artah argues that if the Court decides to allow Plaintiffs'

case to proceed, the Plaintiffs should be required to file a second amended complaint setting out their causes of action with more specificity.

The Court will consider these matters below.

**V.    ANALYSIS**

**A.    'Shotgun' Claims and Permissive Joinder**

Both Defendant Bruch and Defendant Artah urge the Court to find that the Plaintiffs' Amended Complaint is too vague. Specifically, in his Motion to Dismiss, Defendant Bruch argues:

> Plaintiffs base their nine causes of action against Mr. Bruch and Bruchside on a shotgun pleading. Courts in the 8th Circuit have "repeatedly criticized the filing of 'kitchen-sink' or 'shotgun' complaint—complaints in which plaintiff brings every conceivable claim against every conceivable defendant." A shotgun pleading "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts ... contain irrelevant factual allegations and legal conclusions." Such "pernicious" complaints "shift[] onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support." Shotgun pleadings violate Rule 8's requirement to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiffs aver no facts and fail to separate which allegations they attribute to which

> Defendants, even though they named multiple
> Defendants to each count. Although each
> cause of action requires different legal
> elements of proof, all are allegedly
> predicated on the same 536 paragraphs. The
> Complaint does not satisfy Rule 8's
> pleading requirements.

Docket No. 57, Att. 1, p. 20-21. Similarly, Defendant Artah

argues:

> [i]f any of Plaintiffs' claim survives the
> motion to dismiss, Defendants, Artah
> Holdings and Hall, request that the Court
> require Plaintiffs to re-plead their
> Complaint more specifically. Federal Rule
> of Civil Procedure 12(e) allows a party to
> "move for a more definite statement of a
> pleading to which a responsive pleading is
> allowed but which is so vague or ambiguous
> that the party cannot reasonably prepare a
> response." Fed. R. Civ. P. 12(e). The
> Court "in its discretion, in response to a
> motion for more definite statement under
> Federal Rule of Civil Procedure 12(e), may
> require such detail as may be appropriate
> in the particular case, and may dismiss the
> complaint if his order is violated."
> Nelson v. Long Lines Ltd, C02-4083-MWB,
> 2003 WL 21356081 (N.D. Iowa 2003) (citing
> McHenry v. Renne, 84 F.3d 1172, 1179 (9th
> Cir. 1996)).

Docket No. 58, Att 1, p. 25.

In each specific section of their Resistance, Docket No.

80, the Plaintiffs argue that their Amended Complaint is

sufficiently specific to survive a Motion to Dismiss.

However, during the hearing on the Motions to Dismiss, the

attorneys for the Plaintiffs stated that if the Court found more specificity is necessary, they would file a Second Amended Complaint setting out the relationship between each Plaintiff (or Plaintiff Group) and the 12 Counts set out in the Amended Complaint.

The Court is persuaded that the Amended Complaint does contain "shotgun" pleadings, like those previously criticized by the 8th Circuit. The Amended Complaint sets out the Plaintiffs, then sets out the Counts, and implies that each Plaintiff pleads each Count in equal measure. The background contained in the Amended Complaint makes such a blanket allegation unlikely. It is clear from the face of the Amended Complaint that each Plaintiff (or Plaintiff Group) is not equally invested in the securities at issue. Some Plaintiffs contributed hundreds of thousands of dollars. Other Plaintiffs paid much less. Some Plaintiffs bought shares in each of the securities. Some bought into only a few of the securities. Some heard about the securities from family members. Some received written solicitations. Some attended presentations where the Defendants orally offered the securities. Thus, it is not plausible that each Count affects each Plaintiff the same way. Accordingly, **the Plaintiffs are**

**directed to file a Second Amended Complaint within 45 days of the date of this Order**.[6] In that Second Amended Complaint the Plaintiffs **shall set out those Counts that survive the present Motions to Dismiss**, and then state which Defendant(s) and which Plaintiff(s) the individual Counts apply to.[7] [8]

Turning to the issue of severance, the Plaintiffs resist Defendant Artah's argument that the cases should be severed, saying that judicial economy is served by allowing the Plaintiffs to proceed as a group. Specifically, the Plaintiffs argue that:

> [t]here are two specific requirements for permissive joinder of plaintiffs under Federal Rule of Civil Procedure 20(a): (1) a right to relief must be asserted by each plaintiff relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and (2) some question of law or fact common to all the parties must arise in the action. See

---

[6] The Magistrate Judge will conducting a scheduling conference to discuss the discovery schedule beyond the filing of the Second Amended Complaint and any necessary responsive pleadings.

[7] Filing the Second Amended Complaint will also give the Plaintiffs an opportunity to remove Defendants that have already been dismissed from this case, and those Counts that apply to previously dismissed Defendants.

[8] See Federal Rule of Civil Procedure 15(a), giving the Court authority to allow pre-trial amendments as justice requires.

<u>Directv v. Loussaert</u>, 218 F.R.D. 639, 642 (S.D. Iowa 2003) (citations omitted). "The purpose of the Rule is to entertain 'the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is **strongly** encouraged.'" <u>Directv</u>, 218 F.R.D. at 641-42 (citation omitted) (emphasis added). Here, Bruch and Hall contend that the thirty-six Plaintiffs to the current action, who all invested in GAI Funds, all of which were managed by GAI, all of which were created to raise capital for the same purpose (Bruch's Brazilian farming operation), all of whom invested in multiple GAI Funds, all of whom invested or reinvested after learning that Bruchside Fund I paid a 40% ROI, all of whom plead the same causes of action against Bruch and Hall, respectively, arising out of GAI's management of investor funds should not be permitted to be joined in the current action because the several Plaintiffs['] claims do not arise out of the same transaction, occurrence, or same basic set of facts. Not only have Plaintiffs alleged with particularity which statements Bruch and Hall made, Plaintiffs have plead with particularity which Bruch and Hall statements they relied upon when making their investment decisions. Overwhelming, Plaintiffs[] relied upon, among other things, Defendants['] PowerPoint presentations which contained several critical omissions and Defendants['] representations regarding Bruchside Fund I and Fund II's ROI. These allegations certainly satisfy Federal Rule of Civil Procedure 20(a). Moreover, judicial economy is served by joining the thirty-six Plaintiffs in one action. Requiring separate lawsuits for the various Plaintiffs not only wastes judicial resources, but it would create additional

> and unnecessary cost and expense for the
> Plaintiffs.

Docket No. 80, p. 45-46.

As stated by Judge Gritzner in the case cited by the Plaintiffs, there are two specific requirements under Federal Rule of Civil Procedure Rule 20. A right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences. Additionally, some question of law or fact common to all the parties must arise in the action. "The determination of whether the situation constitutes the same transaction or occurrence for purposes of Rule 20, is determined on a case by case basis." <u>Directv</u>, 218 F.R.D. at 642. In this case, the right to relief arises out of the same group of transactions, the alleged sale of the Brazilian farming securities by the Defendants. There are clearly common factual and legal questions. Accordingly, joinder is appropriate, at least throughout the early stages of this case. However, once (if) this case proceeds past summary judgment, the Court will consider a renewed Motion to Sever, or a motion to bifurcate the trial, or any other similar motion the parties deem appropriate.

**B.  Amended Complaint Count I**

Plaintiffs' first claim arises under Securities Act of 1933.  See 15 U.S.C. § 77a.  As set out in the Plaintiffs' brief,

> Section 12(a) creates a private cause of action against "[a]ny person who... offers or sells a security" when a registration statement or oral communication "includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading..."  15 U.S.C. § 77l(a)(2) (2012).

Docket No. 80, p. 18.[9]  To plead a claim under Section 12(a)(2), a plaintiff need only allege that a defendant offered or sold a security to the plaintiff by means of a prospectus or oral communication that was false or misleading with respect to material facts.  <u>Alpern v. UtiliCorp United,</u>

---

[9]  In Count I of Plaintiffs' Amended Complaint, they include claims under both 15 U.S.C. § 77l(a)(1) and 15 U.S.C. § 77l(a)(2).  The Defendants moved to dismiss both claims. The Plaintiffs' brief does not offer a defense of their claim under 15 U.S.C. § 77l(a)(1).  During the hearing on this matter, the Plaintiffs conceded that they were abandoning their claim under 15 U.S.C. § 77l(a)(1).  Accordingly, the Court dismissed that portion of the Amended Complaint during the hearing on this matter.  See Docket No. 111.  However, the Plaintiffs continue to pursue their claim under 15 U.S.C. § 77l(a)(2).

<u>Inc.</u>, 84 F.3d 1525, 1541 (8th Cir. 1996); see 15 U.S.C. § 77l(a)(2).

The Defendants argue that the Plaintiffs' claim under the Securities Act of 1933 should fail for several reasons.

### 1. Statute of Limitations

First, the Defendants argue that the claim is barred by the statute of limitations. "The applicable statute of limitations for § 12(a)(2) claims is governed by § 13 of the 1933 Act, 15 U.S.C. § 77m." <u>Armstrong v. Am. Pallet Leasing Inc.</u>, 678 F. Supp. 2d 827, 867 (N.D. Iowa 2009). Section 13 provides that:

> No action shall be maintained to enforce any liability created under section 77k or 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(a)(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale.

15 U.S.C. § 77m. Thus, § 13 contains both a one-year and three-year limitations period, requiring claims to be brought

33

"within one year after the violation" and no more than "three years after the security was bona fide offered to the public." 15 U.S.C. § 77m.   The three-year period is a statute of repose, not of limitations.  P. Stolz Family Partnership L.P. v. Daum, 355 F.3d 92, 99-107 (2d Cir. 2004); Pacific Mut. Life Ins. Co. v. First RepublicBank Corp., 997 F.2d 39, 52 (5th Cir. 1993).   The Defendants argue that, under the former limit, the Plaintiffs' claim is time barred, stating:

> every purchase claimed by the Plaintiffs occurred outside of the one year statute of limitations...   Plaintiffs filed their Complaint on November 8, 2011, almost two years after the last of these purchases. As such, the 12(a)(1) claim is time-barred. So too with their Section 12(a)(2) claim because, as set forth in Section IV.B.1, supra, Plaintiffs had, at the very least, inquiry notice of the alleged facts underlying this claim by July 2009.

Docket No.57 , Att.1 , p. 32-33.  The Plaintiffs respond by arguing:

> [h]ere, Plaintiffs' Complaint was filed on November 8, 2011.  Plaintiffs have alleged that they only became aware of fact[s] that would alert them to Defendants' violations on or about December 20, 2010[,] after Plaintiffs' counsel had retained a private forensic investigative firm to investigate Defendants.   See Complaint ¶ 532-534. Defendants Bruch and Hall contend, however, that thirty-six separate Plaintiffs knew or should have known about any wrongdoing by Defendants that could have given rise to

> their 12(a)(2) claim before December 20,
> 2010. This is clearly a dispute of
> material fact which cannot be resolved
> through Defendants' motions to dismiss.

Docket No. 80, p. 24.

In the <u>Armstrong</u> case, cited above, the Honorable Mark W. Bennett considered a similar argument and concluded that, "the court concludes that the issue of whether plaintiffs § 12(a)(2) claims are barred by § 13's statute of limitations, is a factual one which cannot be resolved on defendants' motions to dismiss." <u>Armstrong</u>, 678 F. Supp. 2d at 867. Likewise, in this case, the Plaintiffs have made the allegation that they uncovered Defendants' alleged wrong doing on December 20, 2010. The original Complaint was filed on November 8, 2011. Docket No. 1. November 8, 2011, is within one year of December 20, 2010, and the statute of limitations. The Plaintiffs' alleged discovery date may be accurate, or it may not, but the accuracy of that claim is a factual question that cannot be answered at the Motion to Dismiss stage. Accordingly, the Defendants' Motion that Plaintiffs' §12(a)2 claim be dismissed on statute of limitations grounds is **denied**.

## 2. §12(a)2 Standing

Next, Defendant Bruch argues that the Plaintiffs lack standing to bring a §12(a)2 claim. As stated above, in order to plead an adequate claim under section 12(a)(2), a plaintiff need only allege that a defendant offered or sold a security to the plaintiff by means of a prospectus or oral communication that was false or misleading with respect to material facts. Defendant Bruch does not dispute that the Plaintiffs have alleged that he sold a security. Rather, Bruch argues that the Plaintiffs did not purchase the securities in a public offering. Specifically, he states:

> Section 12(a)(2) prohibits sales of securities made through a false or misleading "prospectus or oral communication." In _Gustafson v. Alloyd Co., Inc._, [513 U.S. 561 (1995)], the Supreme Court held that the use of the term "prospectus" meant that the statute applied only to material misstatements or omissions in connection with an initial public offering of securities, not to private sales of securities. Similarly, the phrase "oral communication" is "restricted to oral communications that relate to a prospectus." Standing under section 12(a)(2) is limited to those individuals who purchase securities in a public offering. Plaintiffs do not and cannot allege that the investments at issue here were part of a public offering. Rather, they were sold through private placements.

> Plaintiffs' cause of action under Section
> 12(a)(2) must be dismissed as a matter of
> law.

Docket No.57, Att. 1, p. 34-35. The Plaintiffs reply to this argument by stating:

> [t]he Supreme Court has defined prospectus
> to mean "documents related to public
> offerings by an issuer or its controlling
> shareholders." <u>Gustafson v. Alloyd Co.</u>,
> 513 U.S. 561, 566 (1995). As noted above,
> Bruch and Hall prepared and presented
> PowerPoint slide shows for Bruchside Fund
> I, Bruchside Fund II, and Bruchside Fund
> III investors in an effort to entice
> investors to buy securities. These
> PowerPoint presentations are documents
> related to each public offering. Further,
> Bruch and Hall were the promoters for
> Bruchside Funds I, II, and III, and the
> Global Ag Biodiesel Fund. Bruch and Hall
> also mailed several letters to investors,
> and Bruch constantly blogged to investors,
> in an effort to secure investors for the
> Global Ag Biodiesel Fund, the Gin Fund, the
> BOL Fund I. These letters and blogs are
> documents related to each public offering.
> Plaintiffs have also alleged that Bruch and
> Hall made oral representations regarding
> Bruchside Fund I, Fund II, and Fund III
> during their oral PowerPoint presentations.
> Further, Plaintiffs have alleged that Bruch
> made very specific representations about
> returns during the February 2007 investor
> tours to Brazil. Therefore, there is no
> question that Plaintiffs have alleged that
> Defendants sold securities by means of a
> prospectus or oral communication.

Docket No. 80, p. 21-22. The Plaintiffs go on to discuss the alleged omissions in the security offers. The Plaintiffs then

discuss Bruch's claim that securities were private and did not need to be registered. The Plaintiffs state:

> Defendant Bruch contends that GAI Funds were not required to be registered because these Funds were exempted by Rule 506 as GAI Funds were only available to accredited investors. This argument is contrary to the Bruchside Fund I Form D filed with the SEC which indicates that Defendants sold $300,000 worth of securities to non-accredited investors. See Exhibit 21. It is well settled that Defendants bear the burden of demonstrating that their offering complied with Rule 506. See <u>Parker v. Broom</u>, 820 F.2d 966, 968 (8th Cir. 1987) (noting that defendant have the burden of proving an exemption from registration requirements). Defendant Bruch's paltry three paragraphs hardly establish that Defendants have met all of the strict requirements of Rule 506. Defendants have not, and cannot through a motion to dismiss, presented any evidence that each GAI Fund investor was an accredited investor. Accordingly, Defendants have not met their burden of establishing a Rule 506 exemption from the registration requirements.

Docket No. 80, p. 23.

Defendant Bruch filed a reply brief and stated:

> Plaintiffs misread the law and argue in a section addressing Section 12(a)(2) that the Section 12(a)(2) claim, presumably, should survive because Mr. Bruch has not shown that the registration requirements do not apply to these securities. This contention is irrelevant to Section 12(a)(2) because the registration requirements implicate Section 12(a)(1),

38

not Section 12(a)(2).  And Plaintiffs'
analysis is misplaced in any event.
Plaintiffs base this argument on a
contention that does not appear in the
Complaint: $300,000 worth of securities
were sold to non-accredited investors in
Fund I.  A security offering may be exempt
from registration when it includes only
accredited investors and up to 35
non-accredited investors. According to the
exhibit cited by Plaintiffs, GAI sold
partnership interests in Fund I to only
three non-accredited investors, and
Plaintiffs make no argument whatsoever with
respect to the registration requirements
for the other five investment vehicles...
Section 12(a)(2) applies only to
misstatements in or omissions regarding a
prospectus pertaining to an initial public
offering of securities and to oral
communications relating to such
prospectuses.  Plaintiffs acknowledge this
authority, but do not explain how offerings
made to a limited group of investors
through private placement memoranda qualify
as public offerings, nor could they.
Numerous courts have found that private
placement memoranda like those at issue
"are not 'prospectuses' for the purposes of
a claim under § 12(2)."  Plaintiffs'
Section 12(a)(2) claim fails because the
securities at issue do not implicate the
statute.

Docket No. 90, p. 7-8.

As the Court understands it, Defendant Bruch makes a
rather simple argument:  the securities at issue were never
publicly sold.  The relevant Supreme Court precedent,
Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 584 (1995),

39

clearly states that the use of the term "prospectus" meant that the statute applied only to material misstatements or omissions in connection with an initial public offering of securities, not to private sales of securities. Accordingly, Bruch argues, the Plaintiffs' Section 12(a)(2) claim fails as matter of law. However, neither party specifically sets the exact definition of a public offering. The implication in the Plaintiffs' argument is that because the Defendants used public forums, such as power point presentations at casinos to solicit buyers, they "publically" offered the securities. In any case, the Court is persuaded that the parties' arguments miss the mark when it comes to the Motion to Dismiss standards discussed above. As stated by Judge Bennett in the <u>Armstrong</u> case, cited above, "[b]ecause § 12 claims are only subject to the notice pleading requirements of Federal Rule of Civil Procedure 8, see <u>In re Nations Mart Corp. Sec. Litig.</u>, 130 F.3d 309, 319, the court concludes that plaintiffs have alleged facts that these defendants all either sold or offered ... stock to plaintiffs. Accordingly, this portion of these defendants' respective motions to dismiss are denied." <u>Armstrong</u>, 678 F. Supp. 2d at 867. Similarly, the present Plaintiffs have alleged "Defendants offered and sold GAI Funds

securities to the Plaintiffs. Defendants made untrue statements of fact or omitted material facts in connection with the securities that it sold to the Plaintiffs." Amended Complaint, Docket No. 96, p. 65.

Defendant Bruch makes a powerful argument that the Plaintiffs' claim necessarily fails because the securities were not publically offered and, accordingly, the Plaintiffs are not entitled to Section 12(a)(2) relief. However, for the Court to rule on that argument, the Court would have to determine if a public offer was made, and that is a factual finding. As is well known, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Accepted as true, the Plaintiffs have plead a Section 12(a)(2) claim which alleges that an offer was made. At this early stage, the Court cannot weigh the facts as urged by Defendant Bruch. Accordingly, Defendant Bruch's Motion to Dismiss Plaintiffs' Section 12(a)(2) claim is **denied**.

### 3. **Hall is Not a Seller**

Finally, Defendant Artah argues that Mr. Hall was not a "seller" as contemplated by the statute and, thus, cannot be

held liable for the alleged wrong doing.  Specifically, Artah
argues that:

> [i]n order to adequately plead a claim
> under § 12 of the 1933 Act, a plaintiff
> must allege that the defendant offered or
> sold a security to the plaintiff by means
> of a prospectus or oral communication that
> was false or misleading with respect to
> material facts...  Neither Hall nor Artah
> Holdings were "sellers."  A "seller" "must
> have engaged in actual solicitation."  <u>De
> Wit v. Firstar Corp.</u>, 879 F. Supp. 947, 984
> (N.D. Iowa 1995) (citing <u>Smith v. American
> Nat'l Bank & Trust Co.</u>, 982 F.2d 936, 941
> (6th Cir. 1992)).  To qualify as a "seller"
> for purposes of § 12, ["]a person must have
> either passed title or offered to do so."
> <u>Id.</u> (citing <u>Cyrak v. Lemon</u>, 919 F.2d 320,
> 324-25 (5th Cir. 1990)).  Neither passed
> title nor offered to do so.  Indeed,
> neither was the owner of title to the funds
> at issue.  Further, as to Hall, personally,
> []providers of professional services, such
> as accountants and lawyers, do not usually
> qualify as "sellers", because "[t]he buyer
> does not, in any meaningful sense,
> 'purchase the security from' such a
> person."  <u>Id.</u>  (quoting <u>Ryder Int'l Corp.
> v. First Am. Natl Bank</u>, 943 F.2d 1521, 1528
> (11th Cir. 1991).  Hall, a provider of
> professional services, cannot qualify as a
> "seller" for § 12 purposes.  GAI sold the
> securities to the Plaintiffs, according to
> Plaintiffs' Complaint, not Hall.  See
> Complaint at 30.  Hall merely acted
> pursuant to his duties as general counsel
> to GAI, and providers of these types of
> services do not qualify as sellers.

Docket No. 58, Att. 1, p. 9-10.  The Plaintiffs allege both in
their Resistance and in the Amended Complaint that Defendant

Hall and his business Artah was a seller of the securities. See, for example, Docket No. 80, p. 19-20. Plaintiffs' general allegation is that Defendants Bruch and Hall worked together to promote and sell the securities at issue. Specifically, Plaintiffs state:

> Plaintiffs have alleged that Bruch and Hall offered and/or sold the following unregistered securities to the Plaintiffs: Bruchside Fund I, Bruchside Fund II, Bruchside Fund III, the Global Ag Biodiesel Fund, Gin Fund. See generally Complaint. Plaintiff[s] have alleged and attached documents embraced by the Complaint that Bruch and Hall drafted and presented to the Bruchside Fund I, Fund II, and Fund III slideshows. See Exhibits 1, 7, and 13. Defendants have attached several letters to Plaintiffs from Bruch and Hall informing Plaintiffs of the availability of Bruchside Fund II and Bruchside Fund III for investments. Plaintiffs have alleged that Hall was integral in drafting all Bruchside Fund I, Fund II, Fund III, Global Ag Biodiesel subscription agreements, private placement memoranda, and limited partnership agreements. See Complaint ¶ 76. Finally, even though Hall may not be listed as a promoter for the Gin Fund, Hall was integral in offering and selling Bruchside Fund III securities which included an[] interest in the BOL Fund. Hall's January 8, 2009[,] Form D filing for Bruchside Fund I's indicates that Bruch and Hall are promoters. See Form D filings for Bruchside Fund I, Bruchside Fund II, Bruchside Fund III, Global Ag Biodiesel, and BOL, LLC[,] attached hereto and marked as Exhibit 21. Despite Bruch's representations to the contrary, Bruchside

> Fund I's Form D filing indicates that Bruch
> and Hall sold $300,000 worth of Bruchside
> Fund I securities to non-accredited
> investors. See Exhibit 21. Similarly,
> Hall's October 26, 2009[,] Form D filings
> for Bruchside Fund II and Fund III,
> respectively, indicate that Bruch and Hall,
> among others, are promoters. See Exhibit
> 21. Hall's February 19, 2008[,] Form D
> filing for Global Ag Biodiesel indicates
> that Bruch and Hall are promoters. See
> Exhibit 21.

Docket No. 80, p. 19-20.

The Plaintiffs' Resistance, cited above, makes reference to a number of exhibits that purport to show that Defendant Artah helped sell the securities. (See, for example, Docket No. 80, Exhibit 7.) However, as stated above, and will be stated again below, the Court will not weigh the facts in ruling on a Motion to Dismiss. Rather, the Court's only inquiry is whether the actual allegations are plausible on their face. Turning to that issue, the Court finds that it is possible that Defendant Artah worked with Defendant Bruch to sell the securities. Moreover, the law states that a non-owner can be a seller. "The fact that one is not an actual owner of securities does not necessarily prevent him from being a statutory seller. A non-owner cannot be a seller, however, unless he urges a prospective purchaser to buy." Smith v. Am. Nat. Bank & Trust Co., 982 F.2d 936, 941 (6th

44

Cir. 1992).   The Plaintiffs have alleged that Defendant
Artah/Hall induced the Plaintiffs to purchase the securities.
Accordingly, the Plaintiffs have alleged that Defendant
Artah/Hall is a seller under Section 12(a)(2), and Defendant
Artah's Motion to Dismiss that claim must be **denied**.

### 4.  Count I Conclusion

Because the Plaintiffs have alleged a viable claim on
Section 12(a)(2), Count I, related to Section 12(a)(2), will
be allowed to proceed.   However, as the Court stated above,
the Plaintiffs' claim related to Section 12(a)(1) was
previously dismissed.   When filed, the Plaintiffs' Second
Amended Complaint should reflect that dismissal.

### C.  Count II

Plaintiffs' Count II arises under the Securities and
Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 of
the SEC, 17 C.F.R. § 240.10b-5.   Under § 10(b), it is unlawful
for any person, "directly or indirectly ... [t]o use or
employ, in connection with the purchase or sale of any
security ... any manipulative or deceptive device or
contrivance in contravention of such rules and regulations as
the [SEC] may prescribe...."   15 U.S.C. § 78j(b).   Section
10(b) is not limited to a purchaser or seller of securities,

but rather "reaches any deceptive device used 'in connection with the purchase or sale of any security.'" <u>Id.</u>  The Securities and Exchange Commission, pursuant to this section, promulgated Rule 10b-5, which states that "[i]t shall be unlawful for any person, directly or indirectly:  (a) To employ any device, scheme or artifice to defraud; (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5.  Rule 10b-5 is coextensive in scope with § 10(b).  See <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.</u>, 552 U.S. 148, 128 (2008) ("Rule 10-b encompasses only conduct already prohibited by § 10(b).."); see also <u>SEC v. Zandford</u>, 535 U.S. 813, 816 n. 1,(2002).

The Supreme Court has stressed that § 10(b) should be "construed not technically and restrictively, but flexibly to effectuate its remedial purposes." <u>Affiliated Ute Citizens of Utah v. United States</u>, 406 U.S. 128, 151 (1972).  This

flexibility is necessary to realize the goal of Congress: "substitut[ing] a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry." Affiliated Ute, 406 U.S. at 151.

Regarding the specific pleading standards, it is true that allegations of fraud are generally subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. However, certain aspects of § 10(b) and Rule 10b-5 fall under special pleading standards of the Private Securities Litigation Reform Act (PSLRA). Specifically, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In addition, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In a § 10(b) private action, a plaintiff must prove: "(1) a material

misrepresentation or omission by the defendant; (2) scienter;
(3) a connection between the misrepresentation or omission and
the purchase or sale of a security; (4) reliance upon the
misrepresentation or omission; (5) economic loss; and (6) loss
causation." _Stoneridge Inv. Partners, LLC_, 128 S. Ct. at 768
(citing _Dura Pharmaceuticals, Inc. v. Broudo_, 544 U.S. 336,
341-342 (2005)). Accordingly, the Eighth Circuit Court of
Appeals has directed that in order to survive a Rule 12(b)(6)
motion to dismiss, a securities plaintiff must point to: "(1)
misrepresentations or omissions of material fact or acts that
operated as a fraud or deceit in violation of the rule; (2)
causation, often analyzed in terms of materiality and
reliance; (3) scienter on the part of the defendants; and (4)
economic harm caused by the fraudulent activity occurring in
connection with the purchase and sale of a security."
_Cornelia I. Crowell GST Trust v. Possis Med., Inc._, 519 F.3d
778, 782 (8th Cir. 2008) (quoting _In re K-tel Int'l, Inc. Sec._
_Litig._, 300 F.3d 881, 888 (8th Cir. 2002)). A § 10(b) private
right of action does not extend to aiders and abettors.
_Stoneridge Inv. Partners, LLC_, 128 S. Ct. at 769. Rather,
"[t]he conduct of a secondary actor must satisfy each of the

elements or preconditions for liability ..." <u>Stoneridge Inv.</u>
<u>Partners, LLC</u>, 128 S. Ct. at 769.

The Defendants make several arguments that Plaintiffs'
Section 10(b) claims should be dismissed.[10]

### 1. Statute of Limitations

First, the Defendants argue that Plaintiffs' Section
10(b) claims are barred by the applicable statute of
limitations. The relevant statute states:

> (a) Except as otherwise provided by law, a
> civil action arising under an Act of
> Congress enacted after the date of the
> enactment of this section may not be
> commenced later than 4 years after the
> cause of action accrues. (b)
> Notwithstanding subsection (a), a private
> right of action that involves a claim of
> fraud, deceit, manipulation, or contrivance
> in contravention of a regulatory
> requirement concerning the securities laws,
> as defined in section 3(a)(47) of the
> Securities Exchange Act of 1934 (15 U.S.C.
> 78c(a)(47)), may be brought not later than
> the earlier of-- (1) 2 years after the
> discovery of the facts constituting the
> violation; or (2) 5 years after such
> violation.

28 U.S.C. § 1658. A plaintiff has inquiry notice when he or
she becomes "aware of facts that would lead a reasonable

---

[10] As discussed in Footnote 5, above, Defendant Artah has
adopted Defendant Bruch's arguments in relation to Count II.
See Docket No. 104.

49

person to investigate and consequently acquire actual knowledge of the alleged fraudulent conduct." <u>McKuin v. RF Advisors, LLC</u>, 2005 WL 1773908 (E.D. Mo. 2005). "There are three determinations a court must make in ascertaining whether the inquiry notice standard has been satisfied: (1) the facts of which the victim was aware; (2) whether a reasonable person with knowledge of those facts would have investigated the situation further; and (3) upon investigation, whether the reasonable person would have acquired actual notice of the defendant's misrepresentations." <u>Ritchey v. Horner</u>, 244 F.3d 635, 639 (8th Cir. 2001). Inquiry notice exists when there are 'storm warnings' that would alert a reasonable person of the possibility of misleading information, relayed either by an act or by omission. <u>Id.</u>

The Defendants argue:

> Plaintiffs had, at the very least, inquiry notice of the facts underlying their fraud claims over two years before they filed this action on November 8, 2011. Plaintiffs themselves identify PWC's July 2009 audit of GAI funds as critical to their knowledge of an alleged fraud: "[o]nly after the Price Waterhouse information became available, could anyone other than the Defendants learn the true source of the Returns paid to Bruchside Fund I investors." At that time, "it became clear that Defendants had misrepresented the source of the 40%

> returns as profits from the farming
> operations in Brazil." Plaintiffs repeat
> this allegation with respect to Fund II by
> stating that, "[b]ased on the Price
> Waterhouse review, it became clear that
> Defendants had misrepresented the source of
> the alleged 25% profit from farming
> operations." The statute of limitations
> began running no later than July 2009, more
> than two years before Plaintiffs filed
> suit.

Docket No. 57, Att. 1, p. 23-24. The Plaintiffs acknowledge

that the Price Waterhouse audit was a water shed moment in the

case. (And it seems an agreed fact that the Price Waterhouse

audit occurred more than two years before the filing of the

initial Complaint, Docket No. 1.) However, the Plaintiffs

cite the case of <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1310

(9th Cir. 1982), to argue that because the Defendants

continued to mislead them regarding the alleged fraud during

and after the audit, the date the Plaintiffs were put on

notice about the fraud becomes an issue of fact that should

not be decided at this preliminary stage of the case.

Specifically, the Plaintiffs state:

> [o]n June 12, 2009, just prior to
> disclosing the PWC limited review to
> investors, GAI published its Management
> Discussion and Analysis Report. See
> Management Discussion and Analysis Report
> attached hereto and marked as Exhibit 20.
> On several instances in that report, which
> Bruch represents contains the relevant

information from the PWC limited review, GAI represents that "[t]he financial results [contained in the report] have no cash effect on our Company." See Exhibit 20. As of the date this Management Discussion and Analysis Report, investors had not received a single spreadsheet, balance sheet, financial statement, or audit reflecting losses; let alone cash losses for any of the GAI Fund. Investors were only aware of the ROIs. In addition, Plaintiffs had received several K-1s that also indicated profits. It is telling that in the face of these facts, and despite the voluminous and repeated showering of positive information coupled with GAI's representation that "[t]he financial results have no cash effect on our Company," Bruch contend[s] that the July 2009 PWC limited review should have caused Plaintiffs to immediately initiate a lawsuit against the Defendants. Plaintiffs maintain that they only became aware of facts that would alert them to Defendants['] wrongdoing on or about December 20, 2010[,] after Plaintiffs' counsel had retained a private forensic investigative firm to investigate Defendants. See Complaint ¶ 532-534. Based on the foregoing and in light of <u>Seaboard Corp.</u>, Bruch cannot prevail on a motion to dismiss in reliance on the statute of limitations due to Plaintiffs['] numerous allegations of fraud.

Docket No. 80, p. 29-30.

Based on the forgoing, the Court is persuaded there is a factual dispute regarding when inquiry notice began. Because the Court cannot decide the factual dispute at this early stage of the case, the Defendants' Motions to Dismiss

Plaintiffs' Section 10(b) claims on statute of limitations grounds are **denied**.

## 2. Pleading Standards

Next, the Defendants argue that Section 10(b) claims are subject to higher pleading standards and Plaintiffs Amended Complaint fail to meet those higher standards. "While allegations of fraud are generally subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, certain aspects of § 10(b) and Rule 10b-5 fall under special pleading standards of the PSLRA. Specifically, the complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.' 15 U.S.C. § 78u-4(b)(1). In addition, the complaint must, 'with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' 15 U.S.C. § 78u-4(b)(2)." Armstrong, 678 F. Supp. 2d at 856. The Defendants argue that Plaintiffs' second count falls far short of that standard in

two ways; the allegations are not specific enough, and they do not give rise an inference of scienter. Regarding the first, the Defendants argue:

> Plaintiffs do not approach the pleading requirements of Rule 9(b) and PSLRA. They make no real effort to support the Section 10(b) claim with the necessary specific allegations. Plaintiffs attribute the overwhelming majority of the misrepresentations to "Defendants," rather than specifying who made them, as they must. For example, although the "Plaintiff Investors—Representations, Reliance, Investments and Loss" section contains 334 individual paragraphs that purportedly set forth the fraud against each investor group, all but two of the alleged representations and omissions are attributed to "Defendants." Similarly, the Complaint contains only a scattering of the dates and locations of the alleged misrepresentation, and little if any explanation as to how the representations and alleged omissions duped Plaintiffs into investing.

Docket No. 57, Att. 1, p. 27

In this case, there is no doubt that Plaintiffs' claims related to Section 10(b) are meagerly plead. In its entirety, Plaintiffs' Count II takes up less than two pages of the Amended Complaint. See Docket No.96, p. 65-66. The Plaintiffs seem to acknowledge that the allegations of Section 10(b) fraud in the Amended Complaint are not specifically plead as to particular Defendants. However, the Plaintiffs

argue that they are entitled to level broad allegations at "Defendants" as a group, rather than at the individual Defendants, under the group pleading doctrine. Plaintiffs argue:

> Plaintiffs are entitled to rely upon the "group pleading" doctrine. The group pleading doctrine is an exception to the requirement that the fraudulent acts of each defendant be identified separately in the complaint. _Remmes v. Int'l Flavors & Fragrances, Inc._, 389 F. Supp. 2d 1080, 1089 (N.D. Iowa 2005). Under the group pleading doctrine, Plaintiffs are exempted from the strictures of Rule 9(b). Specifically, Plaintiffs are exempted from specifying the particular role of defendants in the alleged fraud. _Id._ Group pleading allows plaintiffs to "rely on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company." _Id._ (citations omitted); _Accord In re BankAmerica Corp. Secs. Litig._, 78 F. Supp. 2d at 992 (citations omitted) (noting that the group pleading doctrine "involves a rebuttable presumption that individual officers or directors involved in the day-to-day affairs of the corporation are collectively responsible for fraudulent or misleading statements or omission in group published documents such as registration statements, prospectuses, annual reports, and certain press releases."); _In re McLeodUSA Inc., Secs. Litig._, No. C02-001-MWB, 2004 U.S. Dist. LEXIS 8538, at *12 (N.D. Iowa Mar. 31, 2004) ("[U]nder the group-published

> information doctrine, plaintiffs may impute
> false or misleading statements conveyed in
> annual reports, quarterly and year-end
> financial results, or other group-published
> information to corporate officers."); <u>Wool
> v. Tandem Computers Inc.</u>, 818 F.2d 1433,
> 1440 (9th Cir. 1987) ("That exception is
> premised on the assumption that 'in cases
> of corporate fraud where the false or
> misleading information is conveyed in
> prospectuses, registration statements,
> annual report, press release, or other
> 'group-published information,' it is
> reasonable to presume that these are the
> collective actions of the officers.").
> Indeed, courts have noted that a
> Plaintiffs['] reference to "Defendants"
> jointly is sufficient with respect to group
> publications. See e.g., <u>Martino-Catt</u>, 213
> F.R.D. at 315 ("The Court agrees that
> references to 'Defendants' jointly is
> 'sufficiently' with regard to communication
> on the Website and in the Retention Plan
> Prospectus.").

Docket No. 80, p. 26-27.

The law related to the group pleading doctrine cited by

the Plaintiffs above was generally correct at the time those

cases were decided.[11]   However, in their reply, the Defendants

argue that the group pleading doctrine has been limited by the

Supreme Court in the case <u>Janus Capital Grp., Inc. v. First

Derivative Traders</u>, 131 S. Ct. 2296, 2299 (2011).   Docket No.

---

[11]   See also <u>In re Meta Fin. Grp., Inc.</u>, 2011 WL 2893625
(N.D. Iowa 2011), finding that the GPD "does adequately tie
the alleged misrepresentations and non-disclosures to the
various defendants."

90, p. 8. It does not appear that the 8th Circuit has considered the effect the Janus case had on the group pleading doctrine. However, other courts have considered the effect of the Janus decision, and stated that the group pleading doctrine continues to be good law. As one Court stated:

> As for Janus Capital, that case addressed only whether third parties can be held liable for statements made by their clients. Its logic rested on the distinction between secondary liability and primary liability, see Janus Capital, 131 S. Ct. at 2302, and has no bearing on how corporate officers who work together in the same entity can be held jointly responsible on a theory of primary liability. It is not inconsistent with Janus Capital to presume that multiple people in a single corporation have the joint authority to 'make' an SEC filing, such that a misstatement has more than one 'maker.' See City of Roseville, 814 F. Supp. 2d at 417 n. 9. Moreover, as to the PSLRA's requirement that a plaintiff plead securities fraud with specificity as to each defendant, there is no tension between requiring a plaintiff to allege specific facts for individual defendants and presuming that multiple corporate officers may work as a group to produce particular documents. Pfizer, 584 F. Supp. 2d at 638. It is for this reason that, in the cases cited above, most judges in this District have continued to conclude that group pleading is alive and well.

City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp., 875 F. Supp. 2d 359, 374 (S.D.N.Y. 2012). In this

case, the Plaintiffs allege that Defendants Bruch and Hall
worked together to produce misstatements and omissions
regarding the securities. Accordingly, the Court is persuaded
that, under the same rationale employed in the Southern
District of New York case cited above, the group pleading
doctrine continues to be good law as applied to the particular
claim in this case.[12] For that reason, the mere fact that the
Plaintiffs have alleged "Defendants" committed the
misstatement and/or admissions in the Section 10(b), rather
than listing each Defendant's misstatements, individually,
will not defeat their claim.

However, the Defendants also argue that, substantively,
the Plaintiffs have failed to give rise to an inference of
scienter. Defendants argue:

> [w]hile Plaintiffs predictably attribute
> their alleged losses to a "Ponzi scheme,"
> their own allegations and the documents
> they rely on suggest a more compelling
> explanation—that the losses stemmed from
> the very risk factors that GAI disclosed
> regarding investments in an untested
> enterprise operating abroad. The PWC audit
> cited by Plaintiffs suggests that the
> devaluation of the dollar increased the
> costs of doing business in Brazil and,

---

[12]  The Court notes that in a similar case in the Southern
District of Iowa, Judge Gritzner suggests a different
conclusion.  _Aviva Life & Annuity Co. v. Davis_, 2014 WL
2069640 (S.D. Iowa 2014).

coupled with a historic rain event in the
region, led to the demise of the
enterprise. Far short of pleading an
actionable claim of securities fraud, the
Complaint boils down to and stems from the
investors' recognition of the very risks
GAI explained having come to pass and of
the "Defendants" inability to foretell the
worst case scenario.

Docket No. 57, Att. 1, p. 27. Plaintiffs respond that:

GAI's misrepresentations about the 2007 40%
ROI for Bruchside Fund I investors occurred
during or immediately before other GAI Fund
offers. GAI's misrepresentations regarding
the 2008 Bruchside Fund I and Bruchside
Fund II returns occurred during GAI's
Bruchside Fund III offering. The nature
and timing of these misrepresentations also
give rise to an inference that Plaintiffs
have plead, with sufficient particularity,
the scienter requirement of a 10(b) claim.
In addition, GAI's failure to provide
timely and accurate K-1s to investors also
gives rise to a strong inference that
Plaintiffs have plead scienter with
sufficient particularity. The allegations
in [the] Complaint and the facts set forth
above, including the attached document
embraced by the Complaint, give rise to an
inference that Plaintiffs have plead an
obvious connection between the
misrepresentations and/or omissions and the
investors purchasing GAI Funds securities.
The allegations in the Complaint and the
facts set forth above, including the
documents embraced by the Complaint, give
rise to an inference that Plaintiffs relied
on Defendants' misrepresentations and
omission when Plaintiffs determine[d]
whether to continue investing or increase

> their investments in GAI Funds. Plaintiffs
> would not have invested but for GAI
> misrepresentations or omissions.

Docket No. 80, p. 28.

The Court has considered the Plaintiffs' Amended Complaint, and is persuaded that the Plaintiffs have adequately plead a claim under Section 10(b). Although the substance of the section titled 'Count II' of the Amended Complaint is meager, the background portion of the Amended Complaint sets out specific documentation of "(1) misrepresentations or omissions of material fact or acts that operated as a fraud or deceit in violation of the rule; (2) causation, often analyzed in terms of materiality and reliance; (3) scienter on the part of the defendants; and (4) economic harm caused by the fraudulent activity occurring in connection with the purchase and sale of a security." Cornelia I. Crowell GST Trust, 519 F.3d at 782. See, for example, paragraphs 111-112, discussing an allegedly misleading letter sent by Defendant Bruch; paragraphs 118-121, discussing a presentation put on by the Defendants regarding Bruchside Fund II that failed to disclose how GAI would use the funds; paragraphs 153-159, discussing letters sent by the Defendants regarding payouts that allegedly mislead the

investors regarding the source of the payment money, etc. Accordingly, the Defendants' Motion to Dismiss Plaintiffs' Count II regarding Section 10(b) is **denied**.

As the Court noted above, the Plaintiffs will be required to file a Second Amended Complaint. Although the Court is persuaded that the Plaintiffs have plead a Section 10(b), the Plaintiffs shall use the Second Amended Complaint as an opportunity to clarify the particulars of their Section 10(b) claim.

### 3. Hindsight and Bespeaks Caution

The Defendants also argue that the Plaintiffs' Section 10(b) claims should fail because "Plaintiffs cannot create claims based on allegations that "Defendants'" statements or omissions were false or misleading in hindsight" and "offering documents thoroughly explained reasonably foreseeable risk factors associated with the subject investments ... [t]he occurrence of any one of these foretold risks renders any alleged misstatements or omissions associated with them immaterial as a matter of law." Docket No. 57, Att. 1, p. 28-31. The Court is persuaded that those arguments are inherently factual because they require the Court to judge the

accuracy of particular pieces of evidence.  Accordingly, those issues are better raised at the summary judgment stage.

**D.  Count III**

Plaintiffs' third count is that Defendant Hall committed professional negligence.  "'It is well-established that an attorney-client relationship may give rise to a duty, the breach of which may be legal malpractice.  See <u>Ruden v. Jenk,</u> 543 N.W.2d 605, 610 (Iowa 1996).  In a legal malpractice case, the plaintiff generally must demonstrate:  (1) the existence of an attorney-client relationship giving rise to a duty, (2) the attorney, either by an act or failure to act, violated or breached that duty, (3) the attorney's breach of duty proximately caused injury to the client, and (4) the client sustained actual injury, loss, or damage.'  <u>Trobaugh v. Sondag</u>, 668 N.W.2d 577, 581 n. 1 (Iowa 2003).'"  <u>Armstrong</u>, 678 F. Supp. 2d 881.  "[T]he Iowa Supreme Court has recognized third-party legal malpractice claims under 'severely limited circumstances.'  <u>Estate of Leonard v. Swift</u>, 656 N.W.2d 132, 145 (Iowa 2003) (quoting <u>Brody v. Ruby</u>, 267 N.W.2d 902, 906 (Iowa 1978)).  Such circumstances exist where the third party is 'a direct and intended beneficiary of the lawyer's services.'"  <u>Id.</u>

Defendant Hall argues that the Plaintiffs have failed to plead the required elements cited above. Defendant Hall is correct. Plaintiffs' Amended Complaint, Count III, merely lists alleged deficiencies committed by Defendant Hall, such as "[f]ailure to determine the validity of misrepresentations of expense and profit" and "[f]ailure to keep the investments of the investors in GAI funds segregated in separate bank accounts and separate farming operations." Docket No. 96, p. 67. The Amended Complaint makes no attempt to tie the allegations to the standard cited above, nor does it explain whether the Plaintiffs were direct or third party beneficiaries. In their Resistance, the Plaintiffs allege "Hall incorrectly maintains that Plaintiffs seek liability against Hall based on his capacity as an attorney while working for Popular Securities, Inc. This is not the case. Rather, as set forth in Count III of the Complaint, Plaintiffs allege Hall negligently executed his duties within the scope of his employment at Popular Securities, Inc." Docket No. 80, p. 31. However, even if that is true, the Plaintiffs still have failed to give any indication of what legal standard Hall has allegedly violated. For that reason, Defendant Hall's Motion to Dismiss Count III must be **granted**.

### E. Count IV

In Count IV, the Plaintiffs allege that the Defendants breached a fiduciary duty. Under a breach of fiduciary duty claim a plaintiff must prove: "(1) the existence of a fiduciary relationship; and (2) that the [actions taken by the fiduciary] were not beneficial to his or her interests." Vos v. Farm Bureau Life Ins. Co., 667 N.W.2d 36, 52 (Iowa 2003) (quoting Rothwell v. Chubb Life Ins. Co., 191 F.R.D. 25, 32 (D.N.H. 1998)). "A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relationship." Kurth v. Van Horn, 380 N.W.2d 693, 695 (Iowa 1986) (citing Restatement (Second) of Torts § 874 cmt. a (1979)).

Courts have held that to the extent a complaint alleges a breach of fiduciary duty under a fraud theory, the court shall analyze the count pursuant to the Rule 9(b) standards. McGraw v. Wachovia Sec., LLC, 2009 WL 2949290 (N.D. Iowa 2009). Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's

mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) requires a party to plead "'the who, what, when, where[] and how:  the first paragraph of any newspaper story.'" <u>Great Plains Trust Co. v. Union Pac. R.R. Co.</u>, 492 F.3d 986, 995 (8th Cir. 2007).  In its entirety, Count IV states, "Plaintiffs hereby replead and reassert Paragraphs 1 through 549 as though fully set forth herein.  At all times material to this action, a fiduciary relationship existed between the Plaintiffs and Defendants.  Defendants breached that fiduciary duty by providing Plaintiffs with false or misleading information regarding GAI Funds.  The breach of fiduciary duty was a cause of damages to the Plaintiffs.  The conduct of Defendants was willful and wanton.  As [a] result[,] the Plaintiffs are entitled to punitive damages." Docket No. 96, p. 68.  That brief statement fails to comply with the heightened pleading standards of Fed. R. Civ. P. 9(b) in that it fails to state the who, what, when, where and how of the allegation.  Accordingly, Count IV must be dismissed.[13]  The Defendants' Motions to Dismiss Count IV are **granted**.

---

[13]  In their Resistance, the Plaintiffs argue facts that support a breach of fiduciary relationship, but they fail  to argue or otherwise show how Count IV could possibly comply with the requisite pleading standard.  Docket No. 80, p. 33-35.

**F. Count V**

In their fifth count, the Plaintiffs allege conversion. In their briefs, the parties set out the legal standards for conversion in both Iowa and Texas.[13] Under Iowa law, conversion is "'the wrongful control or dominion over another's property contrary to that person's possessory right to the property. The wrongful control must amount to a serious interference with the other person's right to control the property.'" <u>Crawley v. Price</u>, 692 N.W.2d 44, 49 (Iowa Ct. App. 2004) (quoting <u>Condon Auto Sales & Serv., Inc. v. Crick</u>, 604 N.W.2d 587, 594 (Iowa 1999)); see <u>Ezzone v. Riccardi</u>, 525 N.W.2d 388, 396 (Iowa 1994); <u>Kendall/Hunt Publ'g Co. v. Rowe</u>, 424 N.W.2d 235, 247 (Iowa 1988). In order to establish a claim of conversion, a plaintiff must establish a possessory interest in the property. <u>Kendall/Hunt Publ'g Co.</u>, 424 N.W.2d at 247. A person may commit conversion "by obtaining the chattel through fraud or by using a chattel, properly within one's control, in an unauthorized manner." <u>State v. Hollinrake</u>, 608 N.W.2d 806, 808 (Iowa App. 2000) (citing

---

[13]   The limited partnership interests in Bruchside Funds I - III and the Gin Fund, along with the membership interests in Biodiesel Fund, are governed by Texas law.  Bruchside Fund I - III LPAs § 15.3; Gin Fund LP Agreement § 11.9; Biodiesel Fund Company Ag. § 12.9.

Restatement (Second) of Torts §§ 221(b), 228 (1964)). Similarly, in order to state a claim conversion under Texas law, a plaintiff must plead: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; and (3) the defendant refused plaintiff's demand for return of the property. Hunt v. Baldwin, 68 S.W.3d 117, 131 (Tex. App 2001).

In the Amended Complaint, Plaintiffs allege that the Defendants took control of Plaintiffs' money and/or interfered with Plaintiffs' control of their money. Further, Plaintiffs allege that Defendants exercised control of the money and damaged the Plaintiffs through that control. Taken as a whole, it is clear that Plaintiffs allege that the Defendants used fraud to take control of the Plaintiffs' money. Accordingly, the Plaintiffs have properly plead conversion. The Defendants argue that Plaintiffs cannot in fact prove conversation, especially under Texas law. That may be true, but it is a matter more appropriate for the summary judgment

stage.[14]   Accordingly, Defendants' Motions to Dismiss
Plaintiffs' Count V claims are **denied**.

**G.  Count VI**

In Count VI, the Plaintiffs allege the Defendants
committed negligent misrepresentation and nondisclosure.  The
Iowa Supreme Court has recognized that, "[a]s with all
negligence actions, an essential element of negligent
misrepresentation is that the defendant must owe a duty of
care to the plaintiff."  <u>Sain v. Cedar Rapids Cmty. Sch.
Dist.</u>, 626 N.W.2d 115, 124 (Iowa 2001); accord <u>Jensen v.
Sattler</u>, 696 N.W.2d 582, 588 (Iowa 2005) ("Absent a special
relationship giving rise to a duty of care, a plaintiff cannot

_____

[14]   Defendant Artah also alleges that Plaintiffs' state
law claims, including conversion, should be dismissed because
a judgment would require the Plaintiff to pierce the corporate
veil.  Docket No. 86, p. 4-5.  However, as pointed out in the
Plaintiffs' Surreply, Docket No. 94, "[a] corporate officer is
individually liable for fraudulent corporate acts which he or
she participated in or committed.  <u>Grefe v. Ross</u>, supra, 231
N.W.2d at 868.  The exemption from personal liability of
corporate directors and officers is subject to the
qualification of good faith, and honesty of intent and
purpose.  Where there is ulterior motive, the immunity is
withdrawn."  <u>Briggs Transp. Co., Inc. v. Starr Sales Co.,
Inc.</u>, 262 N.W.2d 805, 808-09 (Iowa 1978).  It is clear that
all of Plaintiffs' claims, both those that will survive this
Motion to Dismiss, and those that will not, are rooted in
theories of fraud.  Because Plaintiffs allege that Hall acted
fraudulently and in bad faith, Hall is not protected by the
corporate veil.

establish negligent misrepresentation."). Although the Iowa Supreme Court has recognized that "the Restatement supports a broader view," that court has determined that, under Iowa law, "this duty arises only when the information is provided by persons in the business or profession of supplying information to others." Id. "The elements of the claim are the following: (1) the defendant was in the business or profession of supplying information to others; (2) the defendant intended to supply information to the plaintiff or knew that the recipient intended to supply it to the plaintiff; (3) the information was false; (4) the defendant knew or reasonably should have known that the information was false; (5) the plaintiff reasonably relied on the information in the transaction that the defendant intended the information to influence; (6) and the false information was the proximate cause of damage to the plaintiff." The Conveyor Co. v. Sunsource Tech. Servs., Inc., 398 F. Supp. 2d 992, 1013 (N.D. Iowa 2005).

In their Amended Complaint, the Plaintiffs state:

> Defendants negligently supplied information and failed to disclose material information about the GAI Funds' financial condition, status, business endeavors, contracts and customers. Defendants had a financial interest in supplying or not disclosing

information about the respective GAI Funds.
Defendants intended to supply or refrain
from supplying information about the GAI
Funds for their own benefit and to the
detriment of the Plaintiffs; and/or
Defendants knew that the recipients of such
information about the GAI Funds intended to
supply it for the benefit and guidance of
Plaintiffs. Defendants intended the
information about the GAI Funds to
influence Plaintiffs to invest in GAI
Funds; the Plaintiffs acted in reliance on
the truth of the information about GAI
Funds supplied by Defendants and Plaintiffs
were justified in relying on the
information about GAI. The negligently
supplied information or lack thereof was a
proximate cause of Plaintiffs' damages.

Docket No. 96, p. 69-70.

Both Defendants argue that Plaintiffs have failed to
specifically plead fraud as is required by Federal Rule of
Civil Procedure 9(b). "Under Rule 9(b)'s heightened pleading
standard, allegations of fraud ... [must] be pleaded with
particularity. In other words, Rule 9(b) requires plaintiffs
to plead the who, what, when, where, and how: the first
paragraph of any newspaper story." Crest Const. II, Inc. v.
Doe, 660 F.3d 346, 353 (8th Cir. 2011) (internal citations
omitted).

The parties' arguments related to the adequacy of the
pleading duplicate those made in the previous sections related
to the Plaintiffs' Section 12(a)(2) and Section 10(b) claims,

70

Amended Complaint Counts I-II.  For the same reasons discussed above, the Plaintiffs have adequately plead the elements of negligent misrepresentation.  Accordingly, the Defendants' Motion to Dismiss this claim will be **denied**.

Additionally, Defendant Artah argues that Hall/Artah were not in the business of supplying information.  However, the Amended Complaint clearly makes repeated allegations that Hall was supplying information to the Plaintiffs in a professional capacity.  Whether those allegations are true is a matter of fact beyond the scope of the present Order.  The Plaintiffs have sufficiently alleged Count VI to survive the Motions to Dismiss.

### H.  Count VII

In Count VII, the Plaintiffs allege that the Defendants committed fraudulent misrepresentations and omissions.  In order to establish a claim of fraudulent misrepresentation, plaintiffs must prove:  (1) [the defendant] made a representation to [the plaintiff]; (2) the representation was false; (3) the representation was material; (4) [the defendant] knew the representation was false; (5) [the defendant] intended to deceive [the plaintiff]; (6) [the plaintiff] acted in reliance on the truth of the

representation and was justified in relying on the representation; (7) the representation was the proximate cause of [the plaintiff's] damages; and (8) the amount of damage. Armstrong, 678 F. Supp. 2d at 876. A fraudulent representation need not be an affirmative statement. Fraud may also arise from a failure to disclose material facts. Sinnard v. Roach, 414 N.W.2d 100, 105 (Iowa 1987).

The elements of a fraudulent omission are the same as for fraudulent misrepresentation, requiring plaintiffs to establish: (1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; and (7) resulting injury and damage. Anderson v. Boeke, 491 N.W.2d 182, 188 (Iowa Ct. App. 1992). "Moreover, the omission must 'relate to a material matter known to the party ... which it is his legal duty to communicate to the other contracting party whether the duty arises from a relation of trust, from confidence, from inequality of condition and knowledge, or other attendant circumstances.'" Armstrong, 678 F. Supp. 2d at 876.

In the Amended Complaint, the Plaintiffs allege:

> Defendants intentionally conspired to make misrepresentations and conspired to intentionally omit material information set forth in the proceeding paragraphs.

72

> Defendants misrepresented and omitted
> information regarding GAI's financial
> condition, status, business, endeavors,
> contracts, and customers. Each such
> representation identified above was false.
> Each such representation or omission
> identified above was material. Defendants
> knew the representations were false.
> Defendants intended to deceive the
> Plaintiffs and induce the Plaintiffs to
> invest money in the GAI Funds. Plaintiffs
> were induced and did invest substantial
> sums in reliance upon Defendants' repeated
> misrepresentations and Plaintiffs were
> justified in relying on those
> misrepresentations.

Docket No. 96, p. 71.

The Defendants' arguments related to Count VII are the same as those to Count VI, set out in Section V(G) above.[15] For the reasons discussed above, Defendants' Motions to Dismiss Count VII are **denied**.

**I. Count IX**

Plaintiffs' claims in Count IX arise under Iowa Code §502.501 and §502.501A. The first of those states, "[i]t is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly: 1) To employ a device, scheme, or artifice to defraud; 2) To make an untrue statement of a material fact or to omit to state a material

---

[15] Defendant Artah adopted Defendant Bruch's arguments in relation to Count VII. Docket No. 104, p. 2.

fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or 3) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person." I.C.A. § 502.501. The second, I.C.A. § 502.501A, states, "[a] broker-dealer or agent shall not effect a transaction in, or induce or attempt to induce the purchase or sale of, any security in this state by means of any manipulative, deceptive, or other fraudulent scheme, device, or contrivance, fictitious quotation, or in violation of this chapter. A broker-dealer or agent shall not recommend to a customer the purchase, sale, or exchange of a security without reasonable grounds to believe that the transaction or recommendation is suitable for the customer based upon reasonable inquiry concerning the customer's investment objectives, financial situation and needs, and other relevant information known by the broker-dealer." I.C.A. § 502.501A.

In their Amended Complaint, the Plaintiffs argue that:

> [i]n violation of IUSA §502.501 and §502.501A, Defendants sold to the investors securities by means of written communication. Said written communication included offering written materials which contain misstatements and omissions of material fact. Defendants also made investment recommendations to the investors

> that were unsuitable for the investors.
> Defendants lacked a reasonable basis to
> believe that their recommendations to the
> investors were suitable.  Such violations
> of the Iowa Uniform Securities Act was a
> proximate and actual cause of Plaintiff's
> damages.

Docket No. 96. p. 73.

Again, the Defendants argue that Plaintiffs have failed
to specifically plead fraud as is required by the relevant
precedent.  "The elements of fraud under Iowa law and the
standards for pleading fraud [must be done] with the
particularity required by Rule 9(b) of the Federal Rules of
Civil Procedure."  Seaboard Farms, Inc. v. Pork Data, Inc.,
2000 WL 33915815 (N.D. Iowa 2000).  Federal Rules of Civil
Procedure "9(b) clearly imposes obligations additional to
those stated in Fed. R. Civ. P. 8, which establishes notice
pleading.  In re GlenFed, Inc., Securities Litigation, 42 F.3d
1541, 1547 (9th Cir. 1994).  The statement of the claim must
also aver with particularity the circumstances constituting
the fraud."  DeWit v. Firstar Corp., 879 F. Supp. 947, 989
(N.D. Iowa 1995).

This argument also mirrors the argument regarding the
Plaintiffs' §12(a)(2) and §10(b) claims, discussed in Sections
V(B) and V(C) above.  Specifically, Defendant Bruch argues,

"[t]he same flaws identified with respect to the federal securities and common law misrepresentation causes of action plague Plaintiffs' claim under Section 502.501. Plaintiffs cannot state a claim under the Iowa Act simply by pointing to 'said written communication.' They must identify the communication, who made it, when, where, to whom, and how the communication allegedly was fraudulent." Docket No. 57, Att. 1, p. 37-38.

In Sections V(B) and V(C) (discussing Counts I-II above), the Court determined that the Plaintiffs' Section 12(a)(2) and Section 10(b) claims should survive the Defendants' Motions to Dismiss. For the reasons outlined in Sections V(B) and V(C), the Court determines that the Plaintiffs have adequately plead their I.C.A. § 502.501. Accordingly, the Defendants' Motion to Dismiss that claim is **denied**.

Defendant Bruch also argues that the Plaintiffs' claim under I.C.A. § 502.501A should fail because that section only applies to 'broker dealer and their agents.' Defendant Bruch argues that "[i]n the vernacular, this section applies to investment advisors. Plaintiffs cannot allege that they had such a relationship with any defendant." Docket No. 57, Att.

1, p. 38.  That is a factual argument best left for summary judgment.

Similarly, Defendant Artah argues that:

> [t]he Court should dismiss Plaintiffs' claim against Hall and Artah Holdings for violation of Iowa's securities laws.  As stated above, Plaintiffs' Complaint fails to allege with particularity that Hall or Artah Holdings were "sellers" or supplied information to Plaintiffs.  See supra Part I.A.  Several of the Plaintiffs decided to invest in the Brazilian farming operation based on information provided by other investors and not from Hall or Artah Holdings.  Several Plaintiffs[] invested in Fund II or Fund III after learning from other investors that high returns were paid to Fund I and Fund II.  Hall and the other Defendants never made any representations to several Plaintiffs about investing.  Many of the Plaintiffs decided to make their investments solely based on the representations made by other investors.

Docket No. 58, Att. 1, p. 21-22.  The Plaintiffs have alleged that the Artah Defendants were sellers.  Whether Artah/Hall were sellers is a factual question beyond the scope of the present Motions to Dismiss.  Accordingly, Defendant Artah's Motion to Dismiss Plaintiffs' I.C.A. § 502.501 and I.C.A. § 502.501A claims must be **denied**.

However, as the Court stated above, the Plaintiffs have been directed to file a Second Amended Complaint.  In that document, **the Plaintiffs should take care to particularly**

**state how each Defendant and each Plaintiff relate to each particular claim**.

### J. Count X and Count XI

The Plaintiffs' tenth and eleventh counts have to do with concert of action and conspiracy. In Count X, the Plaintiffs allege that all the Defendants worked in concert to provide false information to the Plaintiffs. In Count XI, Plaintiffs allege that Defendant Bruch acted in conspiracy with Defendants Global Ag Investments, LLC; Bruchside, Inc.; Bol, LLC; Kluis and Tasca.[16]

Iowa has adopted Section 876 of the Second Restatement of Torts regarding concerted tortious action claims. Concerted tortious action occurs when the defendant (a) commits a tortious act in concert with another or pursuant to a common design; (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement; or (c) gives substantial assistance to the other person in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person. <u>Tubbs v. United Central Bank, NA, Des</u>

---

[16] As stated in Section II(B) above, Kluis and Tasca have been dismissed from this case, and Global Ag Investments and Bol are defunct and not participating.

<u>Moines</u>, 451 N.W.2d 177, 182 (Iowa 1990). Texas similarly recognizes the action. <u>III Forks Real Estate, LP v. Cohen</u>, 228 S.W.3d 810, 816 (Tex. App. 2007).

Regarding the concert of action claim, the Plaintiffs allege that:

> Defendants acted in concert with each other Defendant [sic] or pursuant to a common design to provide false or misleading information about GAI Funds to Plaintiffs. Each Defendant knew that the other's conduct constituted a breach of a duty and gave substantial assistance or encouragement to the other in providing false or misleading information to the Plaintiffs. Each defendant gave substantial assistance to the other in providing false or misleading information about GAI Funds to the Plaintiffs and each of the Defendants own conduct, separately considered, constitutes a breach of duty to the Plaintiffs. The Defendants' concert of action was a proximate cause of Plaintiffs['] damages.

Docket No. 96, p. 74.

Defendant Bruch argues that Plaintiffs' concert of action claim cannot survive because they have not alleged a viable underlying tort(s). However, the Court has found that the Plaintiffs have adequately plead various torts, including conversion and negligent misrepresentation. Accordingly, Defendant Bruch's Motion to Dismiss Plaintiffs' concert of action claim is **denied**.

Defendant Artah argues, "t]he Court should dismiss this claim against Hall and Artah Holdings. Artah Holdings did not act in concert to provide false or misleading information to Plaintiffs. Artah Holdings was an entity that made up one of the partners of GAI. Artah Holdings did not engage in supplying information to Plaintiffs and did not agree to act pursuant to a common scheme." Docket No. 58, Att. 1, p. 23. This is a factual argument. Plaintiffs have plead concert of action. The argument that Defendant Artah did not provide false information to the Plaintiffs will be considered at a later stage of the case. But for now, Plaintiffs have sufficiently plead concert of action to survive a Motion to Dismiss. Accordingly, Defendant Artah's Motion to Dismiss Plaintiffs' concert of action claim is **denied**.

Regarding conspiracy, Plaintiffs argue:

> [the non-Artah] Defendants committed the wrong of providing false or misleading information to GAI Fund investors in violation of Federal and State securities laws. Each Defendant knowingly and actively participated in a conspiracy with each of the other Defendants to provide false or misleading information to the Plaintiffs in violation of Federal and State securities laws.

Docket No. 96, p. 74.

Defendant Bruch argues that the Plaintiffs have failed to allege an underlying count that would give rise to a valid conspiracy claim. As stated in their brief:

> the U.S. Supreme Court has, on two separate occasions, held that no private right of action exists under the 1933 and 1934 Securities Exchange Acts for aiding and abetting or concert of action. In its 1994 decision in <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164 (1994), the Court, in discussing both the 1933 and 1934 Acts, explained that "Congress did not attach private aiding and abetting liability to any of the express causes of action of the securities Acts." <u>Id.</u>, at 176. In 2008 <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta</u>, 552 U.S. 148, 158 (2008), the Court reaffirmed that the "§ 10(b) implied private right of action does not extend to aiders and abettors." Courts in this district and elsewhere have held that <u>Central Bank</u> and <u>Stoneridge</u> preclude private parties from asserting aiding and abetting and conspiracy causes of action under federal securities law. Thus, Plaintiffs cannot invoke these counts as the basis for either claim.

Docket No. 57, Att. 1, p. 40-41. The Plaintiffs offer no law or citation that would rebut the Defendants' argument, and the Court has found none. Accordingly, to the extent the Plaintiffs claim a conspiracy on the basis of the violations related to Section 12(a)(2) and Section 10(b), the Defendant

Bruch's Motion to Dismiss is **granted** and those claims are dismissed.

However, Defendant Bruch admits that the Iowa Act includes a private cause of action for secondary liability. See I.C.A. § 502.509(7). As stated above, the Plaintiffs have alleged a viable claim under I.C.A. § 502.501 and I.C.A. § 502.501A. Accordingly, the Plaintiffs' claim of conspiracy, grounded in the alleged I.C.A. § 502.501 and I.C.A. § 502.501A violations, has been adequately plead. Accordingly, Defendant Bruch's Motion to Dismiss Plaintiffs' conspiracy claim related to the Iowa Uniform Securities Act is **denied.**

### K. Count XII

Plaintiffs' final count is for rescission. Under Iowa law, the elements of an equitable claim for rescission based on misrepresentation are: "(1) a representation, (2) falsity, (3) materiality, (4) an intent to induce the other to act or refrain from acting, and (5) justifiable reliance." Gunderson v. ADM Investor Servs., Inc., 85 F. Supp. 2d 892, 920 (N.D. Iowa 2000).

In the Amended Complaint, the Plaintiffs state:

> Defendants made false representations in connections with the offer and sale of GAI Funds. Defendants' representations were material as those statements induced

82

Plaintiff[s] to invest[] in various GAI
Funds. Defendants intended to induce
Plaintiffs into investing in GAI Funds
based on the aforementioned false
representations. Plaintiffs were justified
in relying on Defendants['] false
representations.

Docket No. 96, p. 75. Defendant Bruch argues:

[t]he pleading requirements scuttle
Plaintiffs' request for rescission, which
they seek on the basis of "false
representations" that allegedly "induced
Plaintiff [sic] to invests [sic] in GAI
Funds." When "the basis of the
[plaintiffs'] claim for rescission is
fraud, [it] is subject to the heightened
pleading requirements of Federal Rule of
Civil Procedure 9(b)." Plaintiffs have not
made any creditable allegations of fraud
and their rescission claim cannot survive.

Docket No. 57, Att. 1, p. 44-45. To support their argument,

Defendant Bruch cites the case of St. Paul Reinsurance Co.,

Ltd. v. Commercial Financial Corp., 144 F. Supp. 2d 1057, 1061

(N.D. Iowa 2001). In that case, Judge Bennett stated, "the

court notes that the basis of the London Insurers' claim for

rescission is fraud, which is subject to the heightened

pleading requirements of Federal Rule of Civil Procedure

9(b)." St. Paul Reinsurance Co., Ltd, 144 F. Supp. 2d at

1061.

Defendant Bruch is correct that Plaintiffs' bare bones rescission claim fails to meet the heightened burden of Rule 9(b). Plaintiffs' Count XII sets out the mere elements of a rescission claim. Again, Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). In spite of that clear language, the Plaintiffs have failed to include any particulars in Count XII. Accordingly, Count XII fails as a matter of law. The Defendants' Motions to Dismiss Plaintiffs' rescission claim are **granted**.

### L.  Other Issues

In Counts V, VI and VII of the Amended Complaint, the Plaintiffs allege they are entitled to punitive damages. Throughout their Motions to Dismiss, the Defendants argue that punitive damages are not appropriate. It is clear that Plaintiffs have stated a claim for punitive damages in Counts V, VI, and VII. Whether the Plaintiffs are actually entitled to punitive damages is a question of fact that will either be decided by a motion for summary judgment, or, more likely, at the time of trial.

The Court's typical custom is to consider claims related to punitive damages (and the attendant motions in limine) at the close of the case. After jury instructions have been completed, the Court will ask the Plaintiffs to set out what facts support a claim that the Defendants' actions were willful and wanton. Based on the facts presented during the case, the Court will determine whether the issue of punitive damages should be submitted to the jury.

## VI. CONCLUSION

For the reason set out above, Defendant Bruch's Motion to Dismiss, Docket No. 57, is **GRANTED in part and DENIED in part** as set out above. Additionally, Defendant Artah's Motion to Dismiss, Docket No. 58, and Supplement Motion to Dismiss, Docket No. 104, is **GRANTED in part and DENIED in part**.

Specifically, Plaintiffs' claim related to Section 12(a)(1) is **dismissed**. See Docket No. 111.

The Defendants' Motion that Plaintiffs' §12(a)2 claim be dismissed on statute of limitations grounds is **denied**.

Defendant Bruch's Motion to Dismiss Plaintiffs' Section 12(a)(2) claim on standing grounds is **denied**.

Defendant Artah/Hall's Motion to Dismiss Plaintiffs' Section 12(a)(2) claim, arguing Artah is not a seller, must be **denied.**

The Defendants' Motions to Dismiss Plaintiffs' Section 10(b) claims on statute of limitations grounds are **denied.**

The Defendants' Motion to Dismiss Plaintiffs' Count II claim regarding Section 10(b) on pleading grounds is **denied.**

The Defendants' Motions to Dismiss Plaintiffs' Count V claim regarding conversion are **denied.**

The Defendants' Motions to Dismiss the Plaintiffs' negligent misrepresentation claim, Count VI, are **denied.**

The Defendants' Motions to Dismiss Count VII, related to fraudulent misrepresentation, are **denied.**

Defendants' Motions to Dismiss Plaintiffs' claims related to Iowa Code §502.501 and §502.501A, Count IX, are **denied.**

Defendants' Motions to Dismiss Plaintiffs' Count X claims related to concert of action are **denied.**

To the extent the Plaintiffs claim a conspiracy on the basis of the violations related to Section 12(a)(2) and Section 10(b) in Count XI, Defendant Bruch's Motion to Dismiss is **granted**, and those claims are **dismissed.** However, Plaintiffs' claim of conspiracy, grounded in the alleged

I.C.A. § 502.501 and I.C.A. § 502.501A violations, has been adequately plead.  Accordingly, Defendant Bruch's Motion to Dismiss Plaintiffs' conspiracy claim related to the Iowa Uniform Securities Act is **denied**.

However, the Plaintiffs have failed to give any indication of what legal standard Hall has allegedly violated regarding professional negligence.  For that reason, Defendant Hall's Motion to Dismiss Count III must be **granted**. Similarly, Plaintiffs have not adequately plead a breach of a fiduciary duty.  Accordingly, the Defendants' Motions to Dismiss Count IV are **granted**.

Finally, Defendants' Motion to Dismiss Plaintiffs' rescission claim, Count XII, is **granted**.

Plaintiffs will file a Second Amended Complaint within 45 days of this Order.  In light of the rulings summarized above, the Plaintiffs may include the following claims in the Second Amended Complaint.

Count I, the §12(a)(2) claim, in which Plaintiffs allege that the Defendants offered or sold a security to the plaintiffs by means of prospectus or oral communication that was false or misleading with respect to material facts.

Count II, the §10(b) claim, in which the Plaintiffs allege that the Defendants discretely or indirectly used manipulative and deceptive devices barred by the rules and regulations that the SEC has prescribed.

Count V, the conversation claim, in which the Plaintiffs allege that the Defendants exercised wrongful control and/or dominion over Plaintiffs' property contrary to Plaintiffs' possessory right to said property.

Count VI, the negligent misrepresentation claim, in which the Plaintiffs allege that the Defendants owed a duty of care to the Plaintiffs and ignored said duty by committing acts of negligent misrepresentation and nondisclosure.

Count VII, the fraudulent misrepresentation claim, in which the Plaintiffs allege that the Defendants made material false representations to Plaintiffs, that the Defendants knew the representations were false and intended to deceive the Plaintiffs, and that the Plaintiffs relied on the false representations.

Count XI, the claims arising from I.C.A. §502.501 and 502.501A, in which the Plaintiffs allege that the Defendants employed a device, scheme and artifice to defraud the Plaintiffs.

Finally, Counts X and XI related to concert of action and conspiracy claims as set out above in Section V(J).

**IT IS SO ORDERED** this 31st day of July, 2014.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa