IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **DENNIS SAGEZ, et al.,**<br><br>        Plaintiffs,<br><br>vs.<br><br>**GLOBAL AGRICULTURAL INVESTMENTS, LLC; TYLER BRUCH; BRUCHSIDE, INC.; ART A. HALL; ARTAH HOLDINGS, LLC; and, BOL, LLC,**<br><br>        Defendants. | **No. 11-CV-3059-DEO**<br><br>**ORDER ON MOTION TO DISMISS** |

_____

## I.  INTRODUCTION AND BACKGROUND

This matter is currently before the Court on Defendant Tyler Bruch and Defendant Bruchside, Inc.'s [hereinafter collectively as Bruch] second Motion to Dismiss, Docket No. 126; Defendant Artah Holdings, LLC, and Defendant Art A. Hall's [hereinafter Collectively as Artah] second Motion to Dismiss, Docket No. 131.

The Defendants' Motions raise various issues arguing that the Court should dismiss the Plaintiffs' Amended Complaint, Docket No. 119.  The Court has considered the parties' arguments and now enters the following.[1]

_____

[1]  The Defendants requested an oral argument on the pending motions.  However, the Court notes that this case has

## II. BACKGROUND/PROCEDURAL HISTORY/STATEMENT OF FACTS

The above-captioned case arises in the context of securities fraud. In short, the Plaintiffs, a group of upper-midwest farmers/investors, gave money to the Defendants. The Defendants purported to be engaged in lucrative farming/agricultural operations in the South American country of Brazil, and solicited the Plaintiffs' money as investments in those Brazilian farms. However, the Brazil operations failed to make money; and the Plaintiffs did not see any returns on their investments. The Plaintiffs believe the Defendants committed fraud regarding the investments. Specifically, they allege the Brazil farming operation was

---

been progressing for nearly 4 years and is still at the Motion to Dismiss stage. When the Court set argument on the previous Motions to Dismiss, it took nearly six months to agree on a location and date that worked for all parties and the Court. (Counsel for the various parties are from different areas of the country and at least one of the parties is primarily located internationally.) When the Court did hold hearings on the prior Motions to Dismiss, they took the better part of two days. As is so often repeated, "justice delayed is justice denied." <u>Sec. & Exch. Comm'n v. First Am. Bank & Trust Co.</u>, 481 F.2d 673, 676 n. 3 (8th Cir. 1973). More importantly, the primary issue(s) in the present Motions to Dismiss are the same as in the prior Motions to Dismiss. To wit, the parties largely rely on the same facts and the same law as their prior Motions, and simply apply it to the second Amended Complaint. Accordingly, oral argument is not necessary and would cause unnecessary dely in this case. See Local Rule 7(c), giving the Court discretion on whether or not to hold oral argument on motions.

essentially a Ponzi scheme perpetuated by the Defendants. Based on that belief, the Plaintiffs filed the present lawsuit.

The Plaintiff group is comprised of thirty-six individuals and businesses that invested in Defendant Bruch's and Defendant Hall's various ventures. The Plaintiffs filed their initial Complaint, Docket No. 1, on November 8, 2011. In the initial Complaint, the Plaintiffs named nine Defendants: Global Agricultural Investments, LLC; Tyler Bruch; Bruchside, Inc.; Art A. Hall; Artah Holdings, LLC; Popular Securities, Inc.; BOL, LLC; Alan Kluis and Elia Tasca.[2] After numerous extensions, the Defendant Bruch filed its original Motion to Dismiss, Docket No. 57, September 4, 2012. Defendant Artah filed its original Motion to Dismiss, Docket No. 58, the same day. The Plaintiffs filed a Resistance on December 3, 2012. Docket No. 80. On January

---

[2] On March 20, 2012, the Plaintiffs voluntarily dismissed Defendant Alan Kluis. Docket No. 38. On December 7, 2012, the Plaintiffs voluntarily dismissed Defendant Popular Securities, Inc. Docket No. 85. Based on statements made by the Plaintiffs during the hearing of April 18, 2013, the Court dismissed Defendant Elia Tasca. Docket No. 111. On March 11, 2015, the Clerk of Court entered a default judgment against Defendants BOL, L.L.C., and Global Agricultural Investments, L.L.C. See Docket No. 140. Neither of the later two Defendants had Answered the Complaint or otherwise participated in the case.

15, 2013, the Plaintiffs filed their first Amended Complaint,
Docket No. 96, which superseded their original Complaint.
Shortly thereafter, Defendant Bruch filed a Motion for an in-
person oral argument on the pending Motions.[3]  The Court set
a hearing date on the motion for oral argument for January 22,
2013.    On  January  25,  2013,  Defendant  Artah  filed  a
Supplemental Motion to Dismiss, Docket No. 104, based on the
Plaintiffs' Amended Complaint.[4]  The Court held an in-court
hearing on the initial batch of Motions to Dismiss on April
18, 2013.[5]  The parties did not finish their arguments during
the hearing on April 18, 2013, and a subsequent telephone
hearing was held on April 29, 2013.   On July 31, 2014, the
Court entered an Order denying in part and granting in part
the Defendants' Motions to Dismiss.   See Docket No. 114.
Pursuant to that Order, the Plaintiffs were directed to file
a second Amended Complaint.   Id.  The Plaintiffs filed their

---

[3]  The Court was out of the area at the time and routinely
scheduled civil motion hearings via telephone.

[4]  On April 26, 2013, Defendant Artah filed a Motion for
a  More  Definite  Statement  of  Count  III  of  the  Amended
Complaint.   Docket No. 110.   Magistrate Judge Strand denied
that  Motion,  without  prejudice,  pending  resolution  of  the
Motion to Dismiss.   Docket No. 113.

[5]   The Plaintiffs voluntarily dismissed Count I, part
12-A-I of their first Amended Complaint during the hearing.

second Amended Complaint on September 30, 2014.  On November
25, 2014, Defendant Bruch filed their second Motion to
Dismiss, Docket No. 126.  On December 15, 2014, Defendant
Artah filed their second Motion to Dismiss.  Docket No. 131.
On January 9, 2015, the Plaintiffs filed a Resistance.  Docket
No. 132.  Defendants filed a joint reply on February 13, 2015.
See Docket Nos. 137 and 138.

The Court previously set out the alleged factual
background in its Order on the original Motions to Dismiss.
See Docket No. 114, pp. 4-9.  The factual allegations have not
changed, and the Court need not repeat them again here.

## III.  MOTION TO DISMISS STANDARD

The notice pleading standard of Federal Rule of Civil
Procedure 8(a)(2) requires a plaintiff to give "a short and
plain statement showing that the pleader is entitled to
relief."

Federal Rule of Civil Procedure 12(b) lays the groundwork
for defendants to file pre-answer motions to dismiss.  Under
that rule:

> [e]very defense to a claim for relief in
> any pleading must be asserted in the
> responsive pleading if one is required.
> But a party may assert the following
> defenses by motion:  (1) lack of
> subject-matter jurisdiction; (2) lack of

personal jurisdiction; (3) improper venue;
(4) insufficient process; (5) insufficient
service of process; (6) failure to state a
claim upon which relief can be granted; and
(7) failure to join a party under Rule 19.
A motion asserting any of these defenses
must be made before pleading if a
responsive pleading is allowed. If a
pleading sets out a claim for relief that
does not require a responsive pleading, an
opposing party may assert at trial any
defense to that claim. No defense or
objection is waived by joining it with one
or more other defenses or objections in a
responsive pleading or in a motion.

Fed. R. Civ. P. 12(b).

In order for the Court to dismiss a claim under Federal Rule of Civil Procedure 12(b)(1), the opposing party must successfully challenge the claim "on its face or the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). Facial challenges are limited to analyzing the face of the complaint. Biscanin v. Merrill Lynch & Co., Inc., 407 F.3d 905, 907 (8th Cir. 2005).

However, many, if not most, motions to dismiss are brought under Rule 12(b)(6). In order to meet that standard and to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (internal quotations and citation

omitted).  This requirement of facial plausibility means that the factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Cole v. Homier Distrib. Co., Inc.</u>, 599 F.3d 856, 861 (8th Cir. 2010).  Furthermore, courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation.  <u>Zoltek Corp. v. Structural Polymer Group</u>, 592 F.3d 893, 896 n. 4 (8th Cir. 2010) (internal citation omitted).  This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Iqbal</u>, 556 U.S. at 664.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal alterations and citations omitted).  Nevertheless, although the "plausibility standard requires a plaintiff to show at the pleading stage that

success on the merits is more than a sheer possibility," it is not a "probability requirement." <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009).  As such, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely," <u>Id.</u>

In assessing "plausibility," as required by the Supreme Court in <u>Iqbal</u>, the Eighth Circuit Court of Appeals has explained that courts should consider only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint.  See <u>Mattes v. ABC Plastics, Inc .</u>, 323 F.3d 695, 697 n. 4 (8th Cir. 2003), stating that "in considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint.  <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999).  The Court may also consider "materials that are part of the public record or do not contradict the complaint." <u>Miller v. Redwood Toxicology Lab., Inc.</u>, 688 F.3d 928, 931 (8th Cir. 2012).  "A more complete list of the matters outside of the pleadings that a court may consider, without converting a Rule 12(b)(6)

motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." <u>Van Stelton v. Van Stelton</u>, 11-CV-4045-MWB, 2013 WL 3776813 (N.D. Iowa 2013) (internal citations omitted).

## IV. ISSUES

In its previous Order, Docket No. 114, the Court held that:

> the Amended Complaint does contain "shotgun" pleadings, like those previously criticized by the 8th Circuit. The Amended Complaint sets out the Plaintiffs, then sets out the Counts, and implies that each Plaintiff pleads each Count in equal measure. The background contained in the Amended Complaint makes such a blanket allegation unlikely. It is clear from the face of the Amended Complaint that each Plaintiff (or Plaintiff Group) is not equally invested in the securities at issue. Some Plaintiffs contributed hundreds of thousands of dollars. Other Plaintiffs paid much less. Some Plaintiffs bought shares in each of the securities. Some bought into only a few of the securities. Some heard about the securities from family members. Some received written solicitations. Some attended presentations where the Defendants orally offered the securities. Thus, it is

9

> not plausible that each Count affects each
> Plaintiff the same way.  Accordingly, the
> Plaintiffs are directed to file a Second
> Amended Complaint within 45 days of the
> date of this Order.  In that Second Amended
> Complaint[,] the Plaintiffs shall set out
> those Counts that survive the present
> Motions to Dismiss, and then state which
> Defendant(s) and which Plaintiff(s) the
> individual Counts apply to.

Docket No. 114, pp. 28-29.  Pursuant to that Order, the

Plaintiffs filed the second Amended Complaint, Docket No. 119.

In its second Motion to Dismiss, Defendant Bruch makes three

primary arguments.  First, Defendant Bruch argues that the

Plaintiffs' new Amended Complaint still contains shotgun

pleadings.  Second, Defendant Bruch argues that Plaintiffs

fail to state a valid section 12(a)(2) claim in Count I.

Finally, Defendant Bruch argues that Plaintiffs' Count II

fails to state a Section 10(b)/Rule 10b-5 claim.

Defendant Artah largely adopts the arguments of Defendant

Bruch, with a few clarifications set out in their brief.

Docket No. 131, Att. 1.

The Court will consider these matters below.

**V.  ANALYSIS**

**A.  'Shotgun' Claims and Permissive Joinder**

Defendants argue that the Plaintiffs continue to engage

'shotgun pleading.'  The typical shotgun complaint contains

several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions. Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). Shotgun pleading is prohibited because it obscures plaintiffs' material allegations and severely hinders defendants ability to form a reasonable response. See Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (finding that "[s]hotgun pleading" results in counts that are "replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies"); see also Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1332 (11th Cir. 1998) ("[t]hese general allegations operated as camouflage, obscuring the material allegations of [plaintiff's] claims and necessarily implying that all the allegations were material to each claim."). 'Shotgun pleading' is especially problematic when pleading numerous causes of actions with substantially different elements. See Young v. Wells Fargo & Co., 671 F. Supp. 2d 1006, 1016 (S.D.

11

Iowa 2009).  Such pernicious complaints "shift[] onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support."  Gurman v. Metro Hous. & Redevelopment Auth., 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).  Shotgun pleadings violate Rule 8's requirement to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."

Plaintiffs counter that in their second Amended Complaint, Docket No. 119, all claims are easily distinguishable.  See Iowa Health Sys. v. Trinity Health Corp., 177 F. Supp. 2d 897, 906 (N.D. Iowa 2001).  The Court agrees.  The Plaintiffs have complied with the Court's previous Order and filed a second Amended Complaint that sufficiently distinguishes their claims.  Accordingly, the Defendant's Motion to Dismiss based on improper shotgun pleading will be denied.

**B.  Second Amended Complaint Count I**

Plaintiffs' first claim arises under the Securities Act of 1933.  See 15 U.S.C. § 77a.  As set out in the Plaintiffs' previous brief,

> Section 12(a) creates a private cause of
> action against "[a]ny person who... offers

or sells a security" when a registration
statement or oral communication "includes
an untrue statement of material fact or
omits to state a material fact necessary in
order to make the statements, in light of
the circumstances under which they were
made, not misleading..." 15 U.S.C. §
77l(a)(2) (2012).

Docket No. 80, p. 18.[6] To plead a claim under Section

12(a)(2), a plaintiff need only allege that a defendant

offered or sold a security to the plaintiff by means of a

prospectus or oral communication that was false or misleading

with respect to material facts. Alpern v. UtiliCorp United,

Inc., 84 F.3d 1525, 1541 (8th Cir. 1996); see 15 U.S.C. §

77l(a)(2). The Defendants argue that the Plaintiffs' claim

under the Securities Act of 1933 should fail for several

reasons.

---

[6] In Count I of Plaintiffs' Amended Complaint, they
include claims under both 15 U.S.C. § 77l(a)(1) and 15 U.S.C.
§ 77l(a)(2). The Defendants moved to dismiss both claims.
The Plaintiffs' brief does not offer a defense of their claim
under 15 U.S.C. § 77l(a)(1). During the hearing on the
previous Motion to Dismiss, the Plaintiffs conceded that they
were abandoning their claim under 15 U.S.C. § 77l(a)(1).
Accordingly, the Court dismissed that portion of the first
Amended Complaint during the hearing on this matter. See
Docket No. 111. However, the Plaintiffs continue to pursue
their claim under 15 U.S.C. § 77l(a)(2).

## 1. New Plaintiffs.

The first issue the Court will address is the new Plaintiffs added in the second Amended Complaint. The Defendants argue that:

> [t]he Hemesath Plaintiffs' Claims Are Barred By The Three Year Statute of Repose. This claim should also be dismissed on statute of repose grounds as to the Hemesath plaintiff group. 15 U.S.C. § 77m provides that "[i]n no event shall [an] action be brought to enforce a liability created… under section 77/(a)(2) of this title more than three years after the sale." Thus, a claim under Section 12(a)(2) expires three years after the sale, regardless of when the buyer discovers the purportedly false or misleading statement. See, e.g., John Hancock Life Ins. Co. (U.S.A.) v. JP Morgan Chase & Co., 938 F. Supp. 2d 440, 445 (S.D.N.Y. 2013) ("An examination of the plain meaning and structure of [15 U.S.C. § 77m] supports the conclusion that the statute of repose is not subject to equitable tolling."). The Hemesaths allegedly made their only GAI Fund investment in December 2008. SAC ¶ 228. Because the Hemesaths did not file suit until September 30, 2014, their Section 12 claim is time-barred.

Docket No. 126, Att. 2, p. 17.

Plaintiffs respond that the new claim relates back to the original complaint. See <u>Plubell v. Merck & Co., Inc.</u>, 434 F.3d 1070, 1072 (8th Cir. 2006), stating, "[t]o determine whether an amendment adding a new plaintiff relates back to

the original complaint, federal courts generally either interpret Rule 15(c)(3) or apply a judicial-created test." Under the Rule 15(c)(3) approach, an amendment relates back if the defendant knew or should have known that it would be called on to defend against the claim asserted by the newly-added plaintiff, unless the defendant would be unfairly prejudiced in maintaining a defense against the newly added plaintiff. See <u>Plubell</u>, 434 F.3d at 1072. Defendants reply that:

> [f]or a newly-added plaintiff's claims to relate back to the filing of a previous complaint, the claims must satisfy the three requirements of Rule 15(c) of the Federal Rules of Civil Procedure: (1) the amended complaint must arise out of the conduct, transaction, or occurrence set forth in the original complaint; (2) the new plaintiff's interest must be sufficiently related to the original plaintiff's interest that the defendants receive fair notice of the new plaintiff's claims; and (3) the defendant must not be unduly prejudiced by the addition of the new plaintiff. <u>Self v. Equilon Enters., L.L.C.</u>, No. 4:00-CV-1903TA, 2005 WL 3763533, *5 (E.D. Mo. Mar. 30 2005).

Docket No. 137, p. 12.

The Court is persuaded the parties' arguments miss the point. The Court gave the Plaintiff leave to file the second Amended Complaint to correct issues related to 'shotgun'

pleading, as discussed above.  The Plaintiffs did not apply for leave to add additional plaintiffs to the case, nor did they receive permission to add additional Plaintiffs to this case.  At the time the Plaintiffs filed their second Amended Complaint, Docket No. 119, this case had already been proceeding for nearly three years.  The rules state plaintiffs may amend their complaint once as a matter of course.  The Plaintiffs filed their 'matter of course' Amended Complaint, Docket No. 96, on January 15, 2013.  The rules go on to say that '[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Because the Plaintiffs did not have the Court's leave or the Defendant's permission to add the Hemesaths to the above captioned case, they could not be added under the rules.  Accordingly, the Hemesath plaintiffs will be dismissed from the case.[7]

## 2.  12(a)(2) Public Offering

To plead a section 12(a)(2) claim, a plaintiff must "allege that a defendant offered or sold a security to the plaintiff by means of a prospectus or oral communication that

---

[7] The Court notes that in any subsequent motion to amend or to join, new plaintiffs will have to meet the tough procedural requirements set out above.

was false or misleading with respect to material facts."
Armstrong v. Am. Pallet Leasing Inc., 678 F. Supp. 2d 827, 866
(N.D. Iowa 2009); 15 U.S.C. 77l(a)(2).

This Court previously held that the relevant Supreme
Court precedent, Gustafson v. Alloyd Co., Inc., 513 U.S. 561,
584 (1995), clearly states that the use of the term
"prospectus" meant that the statute applied only to material
misstatements or omissions in connection with an initial
public offering of securities, not to private sales of
securities. The Court summarized the arguments and stated:

> Accordingly, Bruch argues, the Plaintiffs'
> Section 12(a)(2) claim fails as matter of
> law. However, neither party specifically
> sets the exact definition of a public
> offering. The implication in the
> Plaintiffs' argument is that because the
> Defendants used public forums, such as
> power point presentations at casinos to
> solicit buyers, they "publically" offered
> the securities. In any case, the Court is
> persuaded that the parties' arguments miss
> the mark when it comes to the Motion to
> Dismiss standards discussed above. As
> stated by Judge Bennett in the Armstrong
> case, cited above, "[b]ecause § 12 claims
> are only subject to the notice pleading
> requirements of Federal Rule of Civil
> Procedure 8, see In re Nations Mart Corp.
> Sec. Litig., 130 F.3d 309, 319, the court
> concludes that plaintiffs have alleged
> facts that these defendants all either sold
> or offered ... stock to plaintiffs.
> Accordingly, this portion of these
> defendants' respective motions to dismiss

17

are denied." <u>Armstrong</u>, 678 F. Supp. 2d at
867. Similarly, the present Plaintiffs
have alleged "Defendants offered and sold
GAI Funds securities to the Plaintiffs.
Defendants made untrue statements of fact
or omitted material facts in connection
with the securities that it sold to the
Plaintiffs." Amended Complaint, Docket No.
96, p. 65.

Docket No. 114, p. 40-41. The Court noted that:

Defendant Bruch makes a powerful argument
that the Plaintiffs' claim necessarily
fails because the securities were not
publically offered and, accordingly, the
Plaintiffs are not entitled to Section
12(a)(2) relief. However, for the Court to
rule on that argument, the Court would have
to determine if a public offer was made,
and that is a factual finding. As is well
known, in order to survive a motion to
dismiss, "a complaint must contain
sufficient factual matter, accepted as
true, to state a claim to relief that is
plausible on its face." Accepted as true,
the Plaintiffs have plead a Section
12(a)(2) claim which alleges that an offer
was made. At this early stage, the Court
cannot weigh the facts as urged by
Defendant Bruch. Accordingly, Defendant
Bruch's Motion to Dismiss Plaintiffs'
Section 12(a)(2) claim is denied.

<u>Id.</u>

The Defendants' argument is largely repetitive of the one

made during their first Motion to Dismiss. The Defendants add

to their argument by citing cases where courts have struck

12(a)(2) claims at the motion to dismiss stage.   See Docket

No. 131, p. 3, stating:

> courts have struck Section 12(a)(2) claims
> when the offering documents, themselves,
> were private placement memoranda which
> expressly noted that they were not marketed
> to the public and would not be registered
> with the SEC.   See <u>ESI Montgomery County,
> [Inc.] v. Montenay Intern.Corp.</u>, 899 F.
> Supp. 1061, 1065 (SDNY 1995).  Furthermore,
> the cases are legion where 12(a)(2) claims
> were dismissed at the Rule 12(b)(6) stage
> when the Plaintiffs have failed to plead a
> public offering.   See Bruch/Bruchside
> Motion to Dismiss Brief at 14 (Doc. 127-1),
> (citing <u>Brattain v. Alcitepe</u>, 934 F. Supp.
> 2d  119,  126  (DDC  2013);  <u>Gallman  v.
> Sovereign Equity Group, Inc.</u>,  2012  WL
> 1820556,  *5  (DMD  May  15,  2012);  <u>ESI
> Montgomery County, Inc.</u>,  899  F.  Supp.
> [1061],  1065; <u>Walish v. Leverage Group,
> Inc.</u>, 1998 WL 314644 (EDPA June 15, 1998);
> <u>Vannest v. Sage, Rutty and [Co.], Inc.</u>, 960
> F. Supp. 651, 655 (WDNY 1997)).   Simply
> put, Section 12(a)(2) claims do not apply,
> as  a  matter  of  law,  to  the  private
> offerings for the investments in this case,
> as a matter of law.

Regardless, this Court believes the Plaintiffs accurately

set out the Court's prior decision on this matter:

> the  Court  did  not  dismiss  Plaintiffs'
> 12(a)(2) claim because "the Court would
> have to determine if a public offer was
> made, and that is a factual finding[,]"
> which is impermissible when evaluating a
> motion to dismiss.  See Doc. 114, pg. 41.

Docket No. 132, p. 5.

The Court cannot deny that other courts have dismissed cases at the motion to dismiss stage after finding that an offering was not public.  However, this Court is persuaded, as set out in its prior Order, that the Plaintiffs have alleged that a public offering was made.  Accordingly, while the Plaintiffs' allegation may fail as a matter of fact, the Court should withhold ruling on the issue until facts are actually before the Court.  Accordingly, the Defendants' Motion to Dismiss Plaintiffs' 12(a)(2) claims are denied.  The Court will withhold making a finding on the definition of a public offering, and whether one was made in this case, until post-answer motions are before the Court.

## C.  Second Amended Complaint Count II

Plaintiffs' Count II arises under the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 of the SEC, 17 C.F.R. § 240.10b-5.  Under § 10(b), it is unlawful for any person, "directly or indirectly ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe...."  15 U.S.C. § 78j(b).  Section 10(b) is not limited to a purchaser or seller of securities,

but rather "reaches any deceptive device used 'in connection with the purchase or sale of any security.'" Id. The Securities and Exchange Commission, pursuant to this section, promulgated Rule 10b-5, which states that "[i]t shall be unlawful for any person, directly or indirectly: (a) To employ any device, scheme or artifice to defraud; (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. Rule 10b-5 is coextensive in scope with § 10(b). See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 128 (2008) ("Rule 10-b encompasses only conduct already prohibited by § 10(b)."); see also S.E.C. v. Zandford, 535 U.S. 813, 816 n. 1,(2002).

The Supreme Court has stressed that § 10(b) should be "construed not technically and restrictively, but flexibly to effectuate its remedial purposes." Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 151 (1972). This

flexibility is necessary to realize the goal of Congress: "substitut[ing] a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry." Affiliated Ute, 406 U.S. at 151.

Regarding the specific pleading standards, it is true that allegations of fraud are generally subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. However, certain aspects of § 10(b) and Rule 10b-5 fall under special pleading standards of the Private Securities Litigation Reform Act (PSLRA). Specifically, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In addition, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In a § 10(b) private action, a plaintiff must prove: "(1) a material

misrepresentation or omission by the defendant; (2) scienter;
(3) a connection between the misrepresentation or omission and
the purchase or sale of a security; (4) reliance upon the
misrepresentation or omission; (5) economic loss; and (6) loss
causation." Stoneridge Inv. Partners, LLC, 128 S. Ct. at 768
(citing Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336,
341-342 (2005)).  Accordingly, the Eighth Circuit Court of
Appeals has directed that in order to survive a Rule 12(b)(6)
motion to dismiss, a securities' plaintiff must point to:
"(1) misrepresentations or omissions of material fact or acts
that operated as a fraud or deceit in violation of the rule;
(2) causation, often analyzed in terms of materiality and
reliance; (3) scienter on the part of the defendants; and (4)
economic harm caused by the fraudulent activity occurring in
connection with the purchase and sale of a security."
Cornelia I. Crowell GST Trust v. Possis Med., Inc., 519 F.3d
778, 782 (8th Cir. 2008) (quoting In re K-tel Int'l, Inc. Sec.
Litig., 300 F.3d 881, 888 (8th Cir. 2002)).  A § 10(b) private
right of action does not extend to aiders and abettors.
Stoneridge Inv. Partners, LLC, 128 S. Ct. at 769.  Rather,
"[t]he conduct of a secondary actor must satisfy each of the

elements or preconditions for liability ..." <u>Stoneridge Inv.</u>
<u>Partners, LLC</u>, 128 S. Ct. at 769.

In their previous motions, the Defendants argued that
Plaintiffs failed to adequately plead Section 10(b) claims
under the applicable heightened pleading standard. The
Plaintiffs responded that their allegations were adequate
under the group pleading doctrine. The Defendants argued that
the group pleading doctrine was no longer good law. This
Court considered that argument and found that the 8th Circuit
had not yet ruled on the group pleading doctrine, stating:

> [i]t does not appear that the 8th Circuit
> has considered the effect the <u>Janus</u> case
> had on the group pleading doctrine.
> However, other courts have considered the
> effect of the <u>Janus</u> decision, and stated
> that the group pleading doctrine continues
> to be good law... In this case, the
> Plaintiffs allege that Defendants Bruch and
> Hall worked together to produce
> misstatements and omissions regarding the
> securities. Accordingly, the Court is
> persuaded that... the group pleading
> doctrine continues to be good law as
> applied to the particular claim in this
> case. For that reason, the mere fact that
> the Plaintiffs have alleged "Defendants"
> committed the misstatement and/or
> admissions in the Section 10(b), rather
> than listing each Defendant's
> misstatements, individually, will not
> defeat their claim.

Docket No. 114, pp. 56-58.

This Court also found that the Plaintiffs adequately plead scienter, stating:

> [t]he Court has considered the Plaintiffs' Amended Complaint, and is persuaded that the Plaintiffs have adequately plead a claim under Section 10(b). Although the substance of the section titled 'Count II' of the Amended Complaint is meager, the background portion of the Amended Complaint sets out specific documentation of "(1) misrepresentations or omissions of material fact or acts that operated as a fraud or deceit in violation of the rule; (2) causation, often analyzed in terms of materiality and reliance; (3) scienter on the part of the defendants; and (4) economic harm caused by the fraudulent activity occurring in connection with the purchase and sale of a security." Cornelia I. Crowell GST Trust, 519 F.3d at 782. See, for example, paragraphs 111-112, discussing an allegedly misleading letter sent by Defendant Bruch; paragraphs 118-121, discussing a presentation put on by the Defendants regarding Bruchside Fund II that failed to disclose how GAI would use the funds; paragraphs 153-159, discussing letters sent by the Defendants regarding payouts that allegedly mislead the investors regarding the source of the payment money, etc. Accordingly, the Defendants' Motion to Dismiss Plaintiffs' Count II regarding Section 10(b) is denied.

Docket No. 114, p. 60-61. Finally, the Court found that the bespeaks caution doctrine was a factual question best left for a later stage of the case. Id. at 61-62.

In their new Motions, the Defendants make several arguments that Plaintiffs' Section 10(b) claims should be dismissed. Many of the arguments duplicate the arguments raised in the earlier motions. For the reasons set out in the previous Order, Docket No. 114, p. 61, the arguments are denied.[8] However, the Defendants raise a novel argument that because some Plaintiffs were informed about the securities by other Plaintiffs, the Plaintiffs fail to allege that the Defendants made the untrue statements. Specifically, Defendants argue that:

> Rule 10b-5 prohibits "mak[ing] any untrue statements of a material fact" in connection with the purchase or sale of securities. 17 C.F.R. § 240.10b-5. The

---

[8] Specifically, the Court relies on its prior ruling regarding the bespeaks caution doctrine, plaintiffs allegation of scienter, and failure to plead loss causation. When read together, the 620 paragraphs of the Plaintiffs' second Amended Complaint adequately allege a Section 10(b) claim. Regarding the bespeaks caution doctrine, the Court acknowledges that other courts have dismissed claims at the motion to dismiss stage. See <u>Parns v. Gateway 2000, Inc.</u>, 122 F.3d 539, 548 (8th Cir. 1997) (quoting <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1082 (9th Cir. 1995), stating, "[a] dismissal of a securities fraud complaint under Rule 12(b)(6) should be granted under the bespeaks caution doctrine … where the 'documents containing defendants' challenged statements include enough cautionary language or risk disclosure that reasonable minds could not disagree that the challenged statements were not misleading.'" However, if the present Defendants included 'enough cautionary language' in their documents is an inherently factual question that this Court will withhold making at this early stage of the case.

Supreme Court in <u>Janus</u> addressed what it means to "make" a statement for purposes of Rule 10b-5. The Court explained that "[o]ne 'makes' a statement by stating it." 131 S. Ct. at 2302. Under Rule 10b-5, "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right." <u>Id.</u> The maker of the statement must be "the entity with authority over the content of the statement and whether and how to communicate it" because, lacking "such authority, it is not 'necessary or inevitable' that any falsehood will be contained in the statement." <u>Id.</u> at 2303 (emphasis added).

In defining the term "maker," the Court offered the analogy of the relationship between a speech[] writer and a speaker: ["]Even when a speech[] writer drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit—or blame—for what is ultimately said.["] <u>Id.</u> at 2302. The Court rejected a definition of "maker" that would "permit private plaintiffs to sue a person who 'provides the false or misleading information that another person then puts into the statement.'" <u>Id.</u> at 2303... Instead, the Court drew "a clean line": "the maker is the person or entity with ultimate authority over a statement and others are not." <u>Id.</u> at 2302 n.6.

Docket No. 126, Att. 2, p. 22.

The Plaintiffs concede the Defendants' statement of law is correct, noting that:

> [t]o be sure, in order for a misrepresentation to serve as the basis for a Plaintiff's Section 10(b)/Rule 10b-5 claim against a Defendant, <u>Janus Capital Group, Inc., et al. v. First Derivative Traders</u> requires that Defendant "make" the statement. See <u>Janus Capital Group, Inc., et al. v. First Derivative Traders</u>, 131 S. Ct. 2296, 2302-03 (2011). As such, any misrepresentations relied on by a Plaintiff that have not been "made," as defined by <u>Janus</u>, by a Defendant cannot serve as the basis for a Section 10(b)/Rule 10b-5 claim, but that does not preclude those same misrepresentations from serving as the basis for that Plaintiff's state law claims against Defendants, which this Court can hear pursuant to its supplemental jurisdiction. See 28 U.S.C. § 1367 (2015).

Docket No. 132, p. 11. Plaintiffs also seemingly concede that the Defendants' argument has some level of merit stating, "[t]o the extent that <u>Janus</u> may defeat some [of] Plaintiffs' Section 10(b)/Rule 10b-5 claims, those Plaintiffs' state law claims should remain before this Court pursuant to this Court's supplemental jurisdiction." <u>Id.</u> at 12.

In their brief, the Bruch Defendants state that representations made by Plaintiffs Nick Kill and Eric Tieszen cannot be attributed to the Defendants. Accordingly, Defendants argue that "the claims of Adam Hemesath, Keith

Hemesath, Peter Ver Mulm, Reed and Mary Tieszen, and Georgia Kassel, who invested based exclusively on information provided from a source other than Bruch or any Defendant, must be dismissed as a matter of law. See Plaintiff Charts. Moreover, many other Plaintiffs received information about the GAI Funds from sources other than Bruch (or any Defendant), which cannot serve as the basis for claims against Bruch. See Id. (Buesings; Finstrom; Guge; Helgets; Kasparbauer Trust; Kibbies; Lundgren; Schroeder; Craig Tieszen; Reed and Mary Tieszen; Weber Family Farm)." Docket No. 137, p. 10-11.

As the Court stated above, the Hemesath Plaintiffs were improperly added to this case and must be dismissed on other grounds. Thus, the Defendants' argument that the Hemesath Plaintiffs relied on representations made by other Plaintiffs, and must be dismissed under the Janus rationale, is moot. That leaves four other Plaintiffs, Peter Ver Mulm, Reed, Mary Tieszen, and Georgia Kassel, who, the Defendants alleged, relied exclusively on (mis)representations from other Plaintiffs.

In paragraph 110 of the Amended Complaint, it states, "Plaintiffs Eric and Amy Tieszen and Reed and Mary Tieszen purchased their interests in Global Ag Biodiesel in October

2007 after Defendants represented that Bruchside Fund I paid a 40% return on investment." Docket No. 119, p. 18. At paragraph 488 of the Plaintiffs' second Amended Complaint, it states, "Reed and Mary learned about these investment opportunities through their son Eric Tieszen who worked for Bruch in Brazil." However, paragraph 489 then states, "In January 2006, Reed attended a Bruchside Fund I fundraising meeting at the Ramkota Inn in Sioux Fall[s], South Dakota. During that meeting, Bruch presented the 'Global Ag Investment, LLC presents Bruchside Fund I, LP' PowerPoint presentation and Reed received a handout of the same." Docket No. 119, p. 66. It goes on say that Reed Tieszen traveled to Brazil for the 2007 tour and then invested in Bruchside Fund II later in 2007. The second Amended Complaint goes on to say that, "[i]n February 2008, Reed and Mary attended a second investor tour in Brazil... In April 2008, Reed and Mary Tieszen invested $200,000 in the Bruchside Fund III based on the returns Defendants paid Bruchside Fund I investors and Defendants' projected returns for Bruchside Fund II." Docket No. 119, p. 68.

Although the second Amended Complaint initially states that Mary and Reed Tieszen learned about the GAI funds through

their son, they also allege receiving information from the Defendants (on the trips and at the Sioux Falls meeting) before buying particular securities. Accordingly, they have alleged that the Defendants made representations sufficient to survive the Defendants' Motions to Dismiss.

However, the same cannot be said for the other two Plaintiffs singled out in the Defendants' Motions to Dismiss. In the second Amended Complaint, it states that Plaintiff Peter Ver Mulm "relied on his son, Dean Ver Mulm – who also invested in GAI Funds, for information regarding the Funds." Docket No. 119, p. 72. There is no clarifying or additional information. The second Amended Complaint's only discussion of Peter Ver Mulm is that he received the GAI information from his son. Accordingly, Peter Ver Mulm fails to allege a viable Section 10(b)/Rule 10b-5 claim because he does not allege that any Defendant 'made' a false statement to him. His Count II will be dismissed.

Similarly, Ms. Georgia Kassel fails to allege a valid Section 10(b)/Rule 10b-5 claim. As set out in the second Amended Complaint, "[o]n October 12, 2007, [Georgia] Kassel invested $50,000 in Bruchside Fund II based on information she received from Craig Kassel regarding the returns that

Defendants paid for Bruchside Fund I." Docket No. 119, p. 43.
The Complaint goes on to say that Defendant Bruch had dinner
with Georgia Kassel and that he brought her fish. However,
there is no allegation that Defendant Bruch 'made' false
representations to Georgia Kassel during those meetings.
Accordingly, Georgia Kassel's Count II must be dismissed.

The Defendants also argue that the Buesing Plaintiffs,
Plaintiff Finstrom, Plaintiff Guge, the Helget Plaintiffs, the
Kasparbauer Trust, the Kibbie Plaintiffs, Plaintiff Lundgren,
Plaintiff Schroeder, Plaintiff Craig Tieszen, Plaintiffs Reed
and Mary Tieszen, and the Weber Family Farm (allegedly) relied
in part on statements 'made' by persons/entities other than
the Defendants. Clearly, the Defendants are correct. The
second Amended Complaint states that other Plaintiffs,
including Nick Kill, 'made' statements that induced investment
in the GAI funds. (See, for example, second Amended
Complaint, paragraph 157, stating that, "[o]n April 7, 2008,
Nick Kill faxed Dean [Buesing] a copy of the PowerPoint
slide[] show that was presented during the March 2008 meeting
of potential investors in Hancock, Minnesota.") However,
those Plaintiffs also (allegedly) received information from
one or more of the Defendants. (See for example, second

32

Amended Complaint, paragraph 160, stating that, "On April 17, 2008, after the March 2008 meeting, Dean [Buesing] made efforts to contact Bruch regarding investing in Bruchside Fund III. On that same day, Dean received an email from Bruch regarding Fund III investment opportunities. The purpose of Dean's email to Bruch was to verify his understanding of the Fund III and its payouts. Dean received Bruch's response prior to investing in Bruchside Fund III.) The Buesing Plaintiffs, Plaintiff Guge, the Helget Plaintiffs, the Kasparbauer Trust, the Kibbie Plaintiffs, Plaintiff Lundgren, Plaintiff Schroeder, Plaintiffs Reed and Mary Tieszen, and the Weber Family Farm each allege that they received some information from either Defendant Bruch, the Defendants' presentations, the Defendants' website, or from Ms. Gunderson (the Defendants' secretary). Accordingly, they have alleged that a Defendant 'made' a false statement; and, their Count II claims survive the Defendants' Motions to Dismiss.

However, there are two exceptions among the above listed Plaintiffs. First, Plaintiff Craig Tieszen only made the vague allegation that "Defendants also told" him about funds. Docket No. 119, p. 62. Although vague, his allegation is sufficient to survive the Motions to Dismiss. Second,

Defendant Finstrom alleges that he received information from fellow Plaintiff Nick Kill. See Docket No. 119, p. 27. There is no allegation, even a vague one, that any Defendant 'made' a statement to Plaintiff Finstrom. Accordingly, his Section 10(b)/Rule 10b-5 claim fails as a matter of law and must be dismissed.

### D.  Other Issues

To the extent the Defendants' Motions to Dismiss raises other issues not herein addressed, the Court relies on the rational stated in its prior Order, Docket No. 114, pp. 84-89, to deny those Motions.

## VI.  CONCLUSION

For the reasons set out above, Defendant Bruch's Motion to Dismiss, Docket No. 126, and Defendant Artah's Motion to Dismiss, Docket No. 131, are **granted in part and denied in part**.

As set out on page number 16, the Defendants' Motions to Dismiss are **GRANTED** in that the Hemesath Plaintiffs were improperly added to this case and must be DISMISSED; as set out on page number 31, Plaintiff Peter Ver Mulm's Count II must be DISMISSED for failure to state a claim; as set out on page number 31, Plaintiff Georgia Kassel's Count II must be

DISMISSED for failure to state a claim; and, finally, as set out on page number 33, Plaintiff Douglas Finstrom's Count II must be DISMISSED for failure to state a claim.[9]  As set out on page numbers 12, 20, 30, 33, and 34, the remainder of the Defendants' Motions to Dismiss, Docket Nos. 126 and 131, are **DENIED.**

        **IT IS SO ORDERED** this 14th day of April, 2015.

_Donald E. O'Brien_
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

---

        [9]  The Court will retain jurisdiction over Plaintiffs' remaining claims.